(No. 21814.—

NORA FOWLER CURRY *et al.* Appellees, *vs.* NELLIE COTTON
*et al.* Appellants.

*Opinion filed April 21, 1934—Rehearing denied June 6, 1934.*

REARICK & MEEKS, and LOUIS CLEMENTS, for appellants.

CHARLES TROUP, for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Nora Fowler Curry and Stephen S. Curry, being then husband and wife, residents of Danville, Illinois, on the 10th day of August, 1928, executed in the presence of two witnesses an instrument purporting to be their joint will, which is in part as follows:

"I, Stephen S. Curry, and I, Nora Fowler Curry, do hereby make and publish this our last will and testament, jointly bequeathing each to the other, all real and personal property owned by either of us at the time of the death of either of us. The surviving testator to become beneficiary under this will, to all real and personal property of the deceased testator, and to serve as executor or executrix without bond for the other remaining heirs.

"The surviving testator of this covenant, either Stephen S. Curry or Nora Fowler Curry, bequeaths by this will, all real and personal property in his or her possession at time of death, to Robert Albert Learnard and Josephine Learnard, as follows:"

To Josephine Learnard and Robert Albert Learnard, respectively, 63.5 per cent and 36.5 per cent "of the net revenue derived from the renting, leasing or sale" of a nine-apartment building. To Robert A. and Josephine Learnard by the third clause, "all personal property owned

by either testator, to be divided equally at the death of the surviving testator." By the fourth clause Nora Fowler Curry bequeathed her jewelry to Josephine Learnard, and by the fifth clause Stephen S. Curry bequeathed his jewelry to Robert A. Learnard. The sixth clause is as follows:

"It is further covenanted that the surviving testator care and provide for Josephine Learnard, until the time of her marriage.

"The reason for the difference in the percentages of income to be received by Robert A. Learnard and Josephine Learnard, is that Robert A. Learnard has received his education prior to the execution of this will, and that he also has received a farm, prior to the making of this will, under the will of his father."

The instrument was under the seal of each of the testators.

On August 10, 1931, Stephen S. Curry executed and published another instrument as his last will and testament. By this instrument he made bequests of $500 each to Nellie Cotton, Jane Crampton, Mrs. A. J. Saunders, Mrs. Josephine *Plumly,* Robert *E. Leonard,* the Children's Home of Vermilion county, the trustees of St. James Episcopal Church of Danville, Earl Unthank and Ora Unthank. The remainder of the estate was bequeathed to Nora F. Curry, the widow. Frank W. Butterworth and John A. Cathcart were nominated executors.

Stephen S. Curry died on August 31, 1931. Both of the purported wills were presented for probate to the probate court of Vermilion county. The joint will was admitted to record and probate on October 5, 1931. Nora Fowler Curry, nominated by such instrument as executrix thereof, was appointed and qualified as such. No appeal was prosecuted from the order admitting such joint will to record and probate. Upon objections by the present appellees, probate of the later instrument was denied. An appeal was taken from that order to the circuit court of

Vermilion county. The circuit court held such instrument entitled to probate, and it was thereafter admitted to record as the last will of Stephen S. Curry. John A. Cathcart declined to serve as executor, but Frank W. Butterworth qualified and letters testamentary were issued to him.

The widow, together with Robert A. Learnard and Josephine L. Plumely, who had been made beneficiaries under the joint will, filed their bill, and later their supplemental bill, in the circuit court of Vermilion county against the executor, the devisees and legatees under the will dated August 10, 1931. The original and supplemental bills prayed that the joint instrument be adjudged to be an enforceable contract between the husband and wife who executed it; that all the property which Stephen S. Curry owned at the time be declared to be vested in the complainants in accordance with the provisions of such will; that the later purported will of Curry be held void and the defendants be enjoined from receiving any benefits under it. Answers and replications were filed. The cause was tried in open court before the trial judge. The circuit court entered a decree in conformity with the prayer of the original and supplemental bills. From that decree two of the defendants prosecute this appeal.

The record shows that the husband and wife had been married for more than ten years prior to August 30, 1931; that prior to August 10, 1928, they owned as tenants in common the real estate in Danville on which is located an apartment building worth $35,000 and remained such owners until the death of decedent. At the time of the making of the joint will Stephen S. Curry owned certain personal property worth about $10,000, and his wife was also the owner of certain personal property, the value of which is not shown in the record. Curry had no children or descendants, no adopted child, no brothers or sisters or descendants thereof, and no parents. The widow had been previously married and had by that marriage two children,

Robert A. Learnard and Josephine L. Plumely. They were both residing with her at the time of her marriage to Curry, had so resided for more than ten years during the marriage, and stood in the acknowledged relationship of children to Curry.

The contentions of the appellants are that the will of August 10, 1928, was revocable by either party without notice to the other; that there is no evidence to establish a contractual relationship between the decedent and the appellees; that the burden of proof is on the appellees to prove lack of notice on the part of the decedent to his wife; that if there was a contract to make the disposition made by the will of August 10, 1928, it was within the Statute of Frauds; that the appellees have an adequate remedy at law; that there is a misjoinder of parties complainant; that the instrument of August 10, 1931, is the last will of Stephen S. Curry, and that, unaffected by the will of August 10, 1928, it controls the devolution of his property.

The terms "joint wills" and "mutual wills" are sometimes inaptly used interchangeably. A joint will is a written instrument executed and published by two or more persons disposing of the property, or some part of the property, owned jointly or in common by them or in severalty by them. On the death of the testator first dying it is subject to record and probate as his will, and on the death of the surviving testator it is subject to probate as his will. A joint will may or may not be mutual or reciprocal. Mutual or reciprocal wills are the separate instruments of two or more persons, the terms of such wills being reciprocal and by which each testator makes testamentary disposition in favor of the other. (30 Am. & Eng. Ency. of Law, 556.) A will that is both joint and reciprocal is an instrument executed jointly by two or more persons with reciprocal provisions and shows on its face that the bequests are made one in consideration of the other. (*Frazier* v. *Patterson*, 243 Ill. 80, 28 R. C. L. 167.)

The will of August 10, 1928, is a joint will with reciprocal provisions.

When joint wills first came before the English courts they were held invalid. (*Earl of Darlington* v. *Pulteney*, 11 Cowp. 260; *Hobson* v. *Blackburn*, 1 Add. Ecc. 277; *Clayton* v. *Liverman*, 2 Dev. & B. 558.) Such was also the ruling of the earlier decisions of the courts of this country. In more modern times such wills are generally recognized by our courts. *Gerbrich* v. *Freitag*, 213 Ill. 552; *Frazier* v. *Patterson*, *supra*; *Lewis* v. *Scofield*, 27 Conn. 452, 68 Am. Dec. 404; *Evans* v. *Smith*, 28 Ga. 98, 73 Am. Dec. 751; *Carle* v. *Miles*, 89 Kan. 540, Ann. Cas. 1915-A, 363; *In Matter of Dietz*, 50 N. Y. 88.

The authorities are not in harmony in the United States as to whether a joint will may be revoked by one of the testators without notice to the other testator. The case of *Dufour* v. *Pereira*, 1 Dick. 419, decided in 1769, is one of the earliest cases sustaining the validity of a joint will and pioneering the policy of the law as applied to such instruments. It was there announced by the court that although a joint and reciprocal will could be revoked by the action of both testators acting jointly, or by either acting separately by giving notice to the other testator of his revocation or intention to revoke such will, yet a disposition of his property different from the devolution thereof made by the joint will could not be made by one testator secretly and without the knowledge of the other testator. *Frazier* v. *Patterson*, *supra*, is one of the leading cases in this State on the subject of joint wills. The case of *Dufour* v. *Pereira*, *supra*, was there reviewed by this court, and the doctrine announced on the subject of notice and revocation in the *Dufour case* was approved by this court. *Buehrle* v. *Buehrle*, 291 Ill. 589, involved the question of mutual wills made pursuant to a contract. The court there held that the terms of the contract made the mutual wills of the parties their joint will, irrevocable

by either without notice to the other, and cited *Frazier* v. *Patterson* in support of that holding. The rule announced in the *Dufour case* has received recognition and approval in *Carmichael* v. *Carmichael*, 72 Mich. 76, 40 N. W. 176, *Allen* v. *Boomer*, 86 Wis. 364, and *Edson* v. *Parsons*, 155 N. Y. 555.

The rule of law that a joint will is irrevocable without notice is particularly applicable in those instances where the joint will is that of the husband and wife. On account of the relationship of mutual trust and confidence imposed by such status, it may be presumed that the provisions made are induced by the mutual love, respect for and faith which the parties have in each other. Neither should be permitted to violate such fiduciary relation by publishing a separate will subsequent to the execution of a joint will by the parties without full disclosure of such fact by the one making such separate will to the other testator of the joint will.

We are of the opinion that the rule supported by reason and sound, equitable principles and more likely to prevent fraud is, that a joint will may be revocable during the joint lives of the makers upon giving notice by one testator to the other, but such will becomes irrevocable after the death of one of the makers if the survivor accepts any of the benefits made for him by such will. (*Frazier* v. *Patterson, supra;* Thompson on Wills, sec. 28; 1 Redfield on Wills, 182, 183; Schouler on Wills, sec. 455; 40 Cyc. 2119; 30 Am. & Eng. Ency. of Law, (2d ed.) 621.) If the joint will is made pursuant to the terms of a contract written into the will or a contract made *dehors* the will, whether such joint will may be revoked even upon notice to the other testator would depend upon the circumstances. If the contract is for a legal consideration and the one testator has fulfilled his part of it, generally speaking such joint will could not be revoked by one testator without the consent of the other.

The appellants cite *Klussman* v. *Wessling,* 238 Ill. 568, and *Rice* v. *Winchell,* 285 id. 36, as authority for their position that no notice is required in this State to revoke a joint will and that either testator may revoke a joint will at his pleasure. The wills involved in those cases are separate, mutual wills. We have heretofore pointed out the distinction between mutual wills and joint wills. In the case of mutual wills the wills are not, generally, of themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it must be made *aliunde* the wills, although in *Edson* v. *Parsons, supra,* cited by the appellants, the court said that where the instrument is one jointly executed by the husband and wife, while in itself not conclusive evidence of a contract, it is a very material circumstance to be considered as to whether the joint will is made in pursuance of a contract.

In the case at bar we do not have to depend alone upon the rule announced in the *Frazier case, supra,* limiting the right of revocation to the mutual consent of the testators or requiring notice of revocation to the other party by the party revoking or attempting to revoke. The great weight of authority is, that where the joint will is made as the fruition of a contract between the testators it may not be revoked by either testator, with or without notice, without the consent of the other testator. The joint will at bar was executed by the parties thereto as a result of a contract theretofore agreed upon by them, and such contract written into the will is clearly apparent from the four corners of the will.

The will, amongst other matters, states as follows: "The surviving testator of this covenant, either Stephen S. Curry or Nora Fowler Curry, bequeaths by this will," etc. The sixth clause states, "It is further covenanted," etc. The word "covenant" is defined as "an agreement, convention or promise of two or more parties, by deed in writing signed, sealed and delivered, by which either of the

parties pledges himself to the other that something is either done or shall be done or stipulates for the truth of certain facts." (Black's Law Dict. (3d ed.) p. 469; *De-Grasse* v. *Verona Mining Co.* 185 Mich. 514, 152 N. W. 242; *Commonwealth* v. *Robinson,* 1 Watts, (Pa.) 158; *Kent* v. *Edmondston,* 49 N. C. 505.) A covenant, in common parlance, is a written agreement, whether under seal or not. (15 Corpus Juris, 1209; 7 R. C. L. 1084.) In the case at bar the instrument is under seal. This imports a consideration both at law and in equity.

The mutual promises of the husband and wife are sufficient consideration to support the agreement to make a joint will with reciprocal provisions. (*Frazier* v. *Patterson, supra; Wright* v. *Wright,* 215 Ky. 394, 285 S. W. 188; *Brown* v. *Webster,* 90 Neb. 591, 134 N. W. 185.) The fact that the joint will was produced for probate by the widow establishes *prima facie* that the instrument as a contract was delivered.

The contention is made by the appellants that there is no proof that notice was not given the wife by the husband of the making of the will of date August 10, 1931. The widow was sworn and offered as a witness by the appellees. Objections were made and sustained as to her competency to testify to any matters occurring during the existence of the marriage relation. The attorney preparing the will of August 10, 1931, testified that the testator said nothing to him on the subject of the wife having any knowledge of the preparation of such later will. The burden was on the appellants to show the giving of notice on the part of the husband in his lifetime of the supposed revocation of the will by him if the appellants relied upon that defense. The proof was in the nature of a negative. Such proof was not in the control of the appellees. If there was such proof it was within the control of the appellants. The law in that situation presumes that the fact does not exist unless the affirmative, evidence of such fact is pro-

duced. *Kettles* v. *People,* 221 Ill. 221; *Great Western Railroad Co.* v. *Bacon,* 30 id. 347.

The contract between the parties was not within the Statute of Frauds, as such contract was deducible from the written joint will signed by the parties. *Frazier* v. *Patterson, supra; Keith* v. *Miller,* 174 Ill. 64; *Brown* v. *Webster, supra.*

The appellants stress the case of *Peoria Humane Society* v. *McMurtrie,* 229 Ill. 519, as holding that a joint will may be revoked by either maker without notice to the other at any time before death. The court did in that case sustain the revocation of the joint will, with mutual or reciprocal provisions, then before the court, but what the court there said was limited to that particular joint will. The will there under consideration provided that it was to be operative as a will only on condition that neither testator should otherwise dispose of his property by his individual will. It was clear that the right was expressly reserved by each maker of the will to make testamentary disposition of his property thereafter as he saw fit, by his separate will. One of such testators did, pursuant to such right reserved, make his individual will. This court held he had such power in accordance with the privilege retained by him under the joint will. No right is reserved or attempted to be reserved on the part of either testator in the joint will at bar to make any testamentary disposal of his property in the future different from the provisions of the joint will. The *McMurtrie case* is not here in point and is not in conflict with other decisions of this court upon the subject of joint wills.

No issue was made in the court below by the pleadings as to a misjoinder of parties complainant. All of the beneficiaries under each will were necessary parties to the record. If there is a misjoinder, the objection as to misjoinder of two of the beneficiaries with the widow as parties complainant, being made for the first time in this court,

comes too late. It should have been raised by demurrer or answer in the trial court. *Ohio Oil Co.* v. *Daughetee,* 240 Ill. 361.

It is urged that the decree of the trial court should not have restrained Butterworth, as executor of the later will, from administering upon the estate under that will. The executor answered the bills but did not prosecute any appeal from the decree. Two of the beneficiaries under the later will alone have appealed. They were not injured by such portion of the decree. The alleged error was not personal as to them. Moreover, this point was not urged or argued in the original brief filed herein by the appellants but was raised for the first time on the answer to the petition for rehearing. Such contention does not go to the merits of the case and is therefore, under the decisions of this court, considered as waived.

There remains the question as to whether the complainants are limited to an action at law for damages. Where a testator of a valid joint will undertakes to revoke the same by a subsequent will or breaches his contract, the same remedies exist in favor of the injured parties as in other cases of breach of contract to make a will, namely, an action on the contract or a remedy in equity against the parties taking title, by reason of the failure of the promisor to execute the will he contracted to make. (Gardner on Wills, pp. 87, 89.) Where one of the parties to a joint will executed in pursuance of a contract, without the knowledge or consent of the other party to such will undertakes secretly to revoke the will or dispose of his property contrary to the provisions of the will and such subsequent will is probated, the property in the hands of the taker with notice of the first will, or in the hands of volunteers, is impressed with a trust in favor of the beneficiaries under the joint will and such trust may be enforced by a proceeding in equity. *Wright* v. *Wright, supra; Stewart* v. *Todd,* 190 Iowa, 283, 173 N. W. 619; *Brown* v. *Web-*

*ster, supra; Walker* v. *Yarbrough,* 200 Ala. 458, 76 So.
390; 50 Cyc. 2117; 1 Alexander on Wills, sec. 146, pp.
168, 169; Remsen on Preparation and Contest of Wills,
sec. 6, pp. 25, 26.

We have considered all of the several charges urged
against the correctness of the decree and find no reversible
error in the record. The appellee widow has abided by
the terms of the joint will made by her and her husband.
It is just that such will should be sustained and its pro-
visions enforced.

The cause was properly disposed of by the trial court,
and its decree is accordingly affirmed. *Decree affirmed.*

Mr. JUSTICE DEYOUNG, dissenting:

Mutual or reciprocal wills are those in which two or
more persons make reciprocal testamentary provisions in
favor of each other, whether they unite in one, or each ex-
ecutes a separate, instrument. Such wills, if made in pur-
suance of a contract to that end, may be revoked, but the
same remedies exist in favor of the injured party as in other
cases of breach of contract to make a will, namely, an ac-
tion on the contract, or a remedy in equity against the par-
ties taking title by reason of the failure of the promisor
to execute the will he contracted to make. (Gardner on
Wills, sec. 21, pp. 87, 89). Alexander, in his Commen-
taries on the Law of Wills, (vol. 1, sec. 85, pp. 96, 97,)
on the same subject, said: "The general rule seems to be,
although not undisputed, that if two persons execute wills
at the same time, either in one or two instruments, making
reciprocal dispositions in favor of each other, the mere ex-
ecution of such wills does not impose such a legal obliga-
tion as will prevent revocation, without notice, by either
during their joint lives. The case is different, however,
where the mutual or reciprocal wills are the result of a
contract based upon a valid consideration, where there has

been a joining of property interests for the purpose of making a testamentary disposition of the same, or where, after the death of one, the survivor has accepted benefits under the will of the other which was executed pursuant to an agreement. In such cases, where all the facts are fully established, equity will interpose to prevent fraud. This, however, can be accomplished only through a court of equity, the probate court having no jurisdiction."

A probate court may not refuse to admit to record the subsequent will of one of the makers of mutual or reciprocal wills on the ground that the mutual wills were executed pursuant to an agreement and that the subsequent individual will violated the terms of that agreement. "The jurisdiction to determine the existence of and to enforce a contract to make a will," says Alexander in his Commentaries on the Law of Wills, (vol. 1, sec. 84, p. 96,) "is exclusively within a court of equity, and a court of probate can only view the instrument presented in the light of a will and not in the light of an agreement. Even though there may have been a valid contract to make a will, no action will lie to prevent the probate of a will different from that agreed upon, because it is the agreement which is enforced in equity by declaring the executor or devisees under such will to be trustees for the performance of the contract and therefore it is necessary that such will be admitted to probate." If made pursuant to a contract between testators, a mutual or reciprocal will stands on the same footing as any other will executed in obedience to a contract, that is, the will itself may be revoked, but the contract in pursuance of which the will was made may be enforced in an action at law for damages, or in a suit in equity to have those who take the legal title after the death of the promisor held as trustees. In some cases which do not distinguish clearly between the will itself and the right of action on the contract in performance of which the will was made, it is asserted that, under certain conditions, the

will becomes irrevocable in equity. An examination of these cases shows that the question involved was the validity of the contract and the power of law or equity to enforce it, and not the revocable or irrevocable character of the particular will. The statement that the will becomes or is irrevocable results from confusing the will with the contract. I Page on Wills, (2d ed.) sec. 88, pp. 153, 154; Alexander, Commentaries on the Law of Wills, vol. 1, sec. 84, p. 96; *Sumner* v. *Crane,* 155 Mass. 483.

The general rule is that the execution of a joint will is not of itself sufficient evidence of the existence of a contract to bequeath or devise property so as to make the contract enforceable in equity. (*Menke* v. *Duwe,* 117 Kan. 207; *Rastetter* v. *Hoenninger,* 214 N. Y. 66; *Cawley's Estate,* 136 Pa. 628; *Rhodes' Estate,* 277 Pa. 450; *Buchanan* v. *Anderson,* 70 S. C. 454; *Wyche* v. *Clapp,* 43 Tex. 543). An agreement to make mutual wills is not established by the fact that two persons have made reciprocal testamentary dispositions in favor of each other, where the language of the wills discloses nothing to the effect that the instruments are the result of such a contract. (Alexander, Commentaries on the Law of Wills, vol. 1, sec. 85, p. 97). To obtain relief in equity in such a situation, the contract must be clearly and definitely established. (Gardner on Wills, sec. 21, p. 89; *Mullen* v. *Johnson,* 157 Ala. 262; *Wanger* v. *Marr,* 257 Mo. 482; *Edson* v. *Parsons,* 155 N. Y. 555; *Wilson* v. *Gordon,* 73 S. C. 155; *Dicks* v. *Cassels,* 100 S. C. 341). In *Edson* v. *Parsons, supra,* the Court of Appeals, speaking of agreements concerning testamentary dispositions of property, said at page 568: "In this class of cases the ordinary rules, which govern in actions to compel the specific performance of contracts and which furnish reasonable safeguards against fraud, should be rigidly applied. These rules require the contract to be certain and definite in all its parts; that it be mutual and founded upon an adequate considera-

tion and that it be established by the clearest and most convincing evidence." The court, after a reference not material to this inquiry, continued: "A general maxim, which equity recognizes, is that a testator's will is ambulatory until his death. It is a disposition of property, which neither can, nor is supposed to, take effect until after death. * * * To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof." In Page on Wills, (2d ed.) vol. 1, sec. 59, p. 105,) the author says: "Revocability is an essential element of a will; and follows from the idea that the will passes no present interest in the property devised or bequeathed. Such property still belongs to the original owner. He has parted with no interest in it by making the will. He can still sell the property or exchange it, or pledge it or give it away. He may revoke the will already made and make a new will, or die intestate, as he pleases. So essential a feature of a will is revocability that the insertion, in an instrument which is clearly a will, of a clause providing that it is not to be revoked has no effect whatever in preventing revocation. This quality of the will is what is usually meant when it is said that the will is ambulatory."

The majority of the court declares that "The joint will at bar was executed by the parties thereto as a result of a contract theretofore agreed upon by them, and such contract written into the will is clearly apparent from the four corners of the will." To support this statement, references are made to the word "covenant" which appears twice in the instrument. These references, however, ignore the connection in which the word "covenant" is used. In both instances, its use, taken in conjunction with the other words of the sentence, shows, not a contractual relationship, but a provision purely testamentary and necessarily ambulatory in character.

It is further asserted in the opinion of the majority that because the instrument in question is under seal, it "imports a consideration both at law and in equity," and that "The fact that the joint will was produced for probate by the widow establishes *prima facie* that the instrument as a contract was delivered." The instrument under review, like many other wills, has seals affixed to the signatures of the makers. The testator and testatrix by the opening sentence of the instrument make and publish it as their last will and testament; and the attesting witnesses certify that the instrument was "Signed, sealed, published and declared" by the makers "as and for their joint will." Manifestly the presence of the seals does not transform the instrument into a contract. Nor does its presentation to and proof in the probate court even tend to give it a contractual aspect or to infuse into it any effect other than that which results from a testamentary disposition of property. To deprive a joint and mutual or reciprocal will executed by a husband and his wife of its ambulatory character and to transform it into a contract, it is only necessary, according to the decision of the majority, to employ a term familiar in the law of contracts; to affix seals to the signatures of the makers and to have the survivor produce the instrument for probate and record. No authority is cited to sustain this position and it is respectfully submitted that it is not maintainable.

The evidence in this case merely shows that Curry and his wife desired to make a joint will by which each would leave his or her property to the survivor and upon the latter's death, the property of both would go to the children of the wife. No contractual relationship, oral or written, or consequent duty or obligation to execute such an instrument was shown to exist between its makers or between Curry and the children of his wife by her former marriage. There is no proof that the instrument was based upon a consideration or that it resulted from any accrued or exist-

ing right of either testator against the other. No contract to make reciprocal wills is disclosed and no reference to such a contract, either oral or written, appears. The evidence fails to show a single obstacle to the revocation of the joint instrument by Curry on August 10, 1931. The instrument remained ambulatory, he had received no property under or by virtue of it, and he was not embarrassed by any contractual duty or obligation. Under these circumstances, he had the power to revoke the joint instrument to the extent that it concerned him; and by his death, the survivorship of his wife and the consequent impossibility that he take under the instrument, his subsequent individual will, proved and admitted to record, necessarily governs exclusively the disposition of his property.

The majority of the court declares that, in its opinion, the "rule supported by reason and sound, equitable principles and more likely to prevent fraud is, that a joint will may be revocable during the joint lives of the makers upon giving notice by one testator to the other." To support this doctrine reliance is placed upon *Frazier* v. *Patterson*, 243 Ill. 80. In that case a husband and his wife executed a joint will making reciprocal dispositions of property and devising the remainder to their grandchildren. The husband died, and his widow proved the instrument as his will, accepted its provisions and took possession of the land the husband had devised to her. After his death, the widow executed another will by which she attempted to revoke the joint instrument and to make a different disposition of her estate. Upon a bill filed by remaindermen for a partition of the real estate in accordance with the provisions of the joint will, the relief sought was granted. The widow had received the benefit of that will, and the well established rule that equity will not allow one who has received an advantage under an instrument to refuse performance on his part was enforced.

The opinion of the majority is also based upon the English case of *Dufour* v. *Pereira,* 1 Dickens, 419, decided in 1769. The joint will in that case was the result of a contract between a husband and his wife. The husband died and the widow proved the will and accepted the legacies bequeathed to her. She afterwards made another will and the question was whether she could thereby rescind the contract with her husband. By his death, the contract on his part had been performed and the court would not permit her to violate it. Lord Chancellor Camden declared that the widow "having proved the mutual will, after her husband's death, and having possessed all his personal estate, and enjoyed the interest thereof during her life, hath by those acts bound her assets to make good all her bequests in the said mutual will."

The third case invoked by the majority to sustain the doctrine that the revocation of a joint will by one maker requires notice to the other is *Buehrle* v. *Buehrle,* 291 Ill. 589. Mutual wills, it was disclosed, had been executed pursuant to a contract under seal, and a bill for an accounting of assets of the estate of the deceased testator was filed. No question of the revocation of a joint or other type of will arose or was decided in the case. It appears therefore that the question of giving notice of revocation by one of the makers of a joint will to the other while the instrument retained its ambulatory character was not involved in any of the cases relied upon, and that, when the question actually decided in them is considered, they are of no avail to support the rule concerning notice announced in the opinion of the majority.

The statement is made in the opinion of the majority that "The rule of law that a joint will is irrevocable without notice is particularly applicable in those instances where the joint will is that of the husband and wife. On account of the relationship of mutual trust and confidence imposed by such status, it may be presumed that the provisions

made are induced by the mutual love, respect for and faith which the parties have in each other. Neither should be permitted to violate such fiduciary relation by publishing a separate will subsequent to the execution of a joint will by the parties without full disclosure of such fact by the one making such separate will to the other testator of the joint will." No authority is cited for this statement. Joint and mutual or reciprocal wills, especially when executed by husbands and wives, usually are based upon mutual trust and confidence, but that fact alone neither makes the instrument a contract nor destroys its ambulatory character.

The situation in the case at bar differs essentially from those in the cases upon which the majority relies. Curry received no benefit through or by means of the joint instrument and he did not, by revoking it, deprive his wife of any right, interest or privilege. The dispositions by the terms of the mutual instrument were ambulatory and notice to the wife in her husband's lifetime of his revocation of that instrument was unnecessary. This result follows from the decision in *Peoria Humane Society* v. *McMurtrie,* 229 Ill. 519. In that case a mother and her son executed a joint instrument making reciprocal testamentary dispositions of property. The remainder of the instrument provided that if both makers should die or, after their deaths, if no individual will had been executed, the property of both should be treated as one and the same and be disposed of as directed by subsequent provisions of the instrument. The son thereafter successively married, made his individual will and died. His new or last will was proved and his estate was settled. The mother survived the son about five years, and an administrator of her estate was appointed. Subsequently the joint instrument was presented to the probate court as the last will of the mother. Probate was refused both by that court and by the circuit court on appeal. Upon a further appeal, this court held that the makers intended that the remainder of the instru-

ment should take effect as the will of both or neither and affirmed the judgment of the circuit court. Mr. Justice Cartwright, in delivering the opinion of the court, said: "A joint, mutual or reciprocal will, like any other, is ambulatory during the lives of the makers, and it may be revoked by either at any time before his death. The right of revocation cannot be doubted, at least as to either maker who has taken no benefit or advantage under the will. And that was the case here. So far as the instrument was the will of Harry G. Rouse it was revoked by his subsequent marriage, and he also made an individual will, which could have operated as a revocation. * * * The whole property and estate of that maker who should first die was given to the other, to be used as the survivor might see fit. That provision of the will was mutual or reciprocal, and the will having been revoked by Harry G. Rouse, his estate did not pass, by virtue of it, to his mother, Mary W. Rouse." To sustain the son's right to revoke the joint and mutual or reciprocal portion of the will, the court did not have recourse to the joint disposition of the estates of the testators which followed and which contained the provision respecting the making of an individual will. The son had taken no benefit or advantage under the will and his right of revocation was based upon the applicable rule of law. The case at bar presents a similar situation. Curry, exercising a power he possessed, revoked the joint instrument before any rights accrued under it. Nora Fowler Curry, the other maker of that instrument, survives him. By his death his individual will became effective; and there is no basis upon which the relief sought by the appellees may be granted.

In my opinion, the decree of the circuit court should be reversed and the cause remanded to that court with directions to dismiss the bill and the supplemental bill for the want of equity.