(No. 29966.—

Irving Scham *et al.,* Appellees, *vs.* R. W. Besse, Exr., Appellant.

*Opinion filed May 22, 1947—Rehearing denied September 15, 1947.*

310

CARL E. SHELDON, BESSE & BESSE, and ALEXANDER L. HAGLUND, all of Sterling, for appellant.

WARD & WARD, of Sterling, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Whiteside county which directed the conveyance of certain real estate and the payment of the residue of the estate of Isaac Korn to the appellees, in accordance with the terms of a contract to make a will.

The pertinent facts shown by the record are as follows: On May 13, 1936, Isaac Korn, a man 79 years old, was the owner of two parcels of land in the city of Sterling. A mortgage given on one of them had been foreclosed and a master's certificate of sale had been issued, and at the date of the contract Korn's period of redemption was near expiration. A deficiency judgment for $480.14 entered against him in the foreclosure proceeding was a lien on the other piece of property. The lot foreclosed upon was also subject to a special assessment of $81.42. Korn needed at least $1700 to redeem and refinance his property. A number of witnesses told of his deep concern and his efforts to secure financial assistance.

In this state of affairs Korn, on May 13, 1936, opened negotiations with the appellees, Irving Scham and Philip Scham, resulting in a written contract which stated Korn's predicament and need of money, and stipulating that appellees would negotiate a loan of $1700, and, if successful, Korn was to secure the loan by giving a mortgage on both properties and execute a will conveying both properties to appellees subject only to the mortgage. It was agreed that Korn by his will would devise to them his residuary

estate after payment of his debts and funeral expenses, the latter subject to the payment of the income therefrom to Ben Korn, a brother, for his life. Appellees either loaned Isaac Korn $1700, or procured the loan for him, and he executed a mortgage and a will, both dated in May, 1936, in compliance with the terms of his contract. This contract was never placed on record. Korn died December 20, 1944.

Ben Korn, the brother of Isaac, died in 1938, and left a small estate to Isaac. On May 24, 1943, Isaac Korn paid the $1700 indebtedness owed to appellees or Eva Solomon, their sister, and the mortgage given to secure it was released. On July 8, 1944, he executed a new will, revoking former wills, in which he left his estate to persons unrelated to him and who had no particular claim upon his bounty. On September 2, 1944, following a fire which had destroyed the building on the lot originally mortgaged, Korn sold that lot at public auction for $4000. From the pleadings it appears that he also sold the east one-third of the other lot sometime in 1944. No objection was raised by appellees at the time of these sales.

Korn's will of July 8, 1944, was admitted to probate and on May 9, 1945, appellees filed their complaint in the circuit court of Whiteside county against the executor, appellant, seeking to enforce their contract against the real estate which Isaac Korn had not conveyed during his lifetime, and against his residuary estate. The issues were formed and the cause referred to a master for hearing, who found the equities were with the appellant and recommended a decree in his favor. Exceptions were sustained and the chancellor entered a decree directing the appellant executor to convey to appellees the unsold portion of real estate owned by Korn, and at the conclusion of the administration of Korn's estate, to pay to them any balance left in his hands for distribution. A large number of exceptions have been filed, raising, however, but four main points:

(1) want of jurisdiction of the circuit court; (2) that the contract was usurious; (3) that the contract was without adequate consideration, and, (4) that the trial court erroneously decreed the transfer to appellees of a portion of one of the lots sold by Korn in his lifetime. On the contention that the circuit court did not have jurisdiction, it is argued that jurisdiction lay in the county court in which Isaac Korn's will of July 8, 1944, had been probated, and that the issue there was whether that will or the will of May 18, 1936, made in compliance with his contract, should be probated. This argument overlooks, however, the obvious fact that appellees base their action on the contract executed by Korn, rather than the will he executed pursuant to the contract. That a court of equity is the proper tribunal in which to seek specific performance of a contract requires no elaboration. This court has consistently held that it is competent for a person owning property to make a contract to dispose of it by will in a particular way, and that such a contract, when based upon valid, adequate and just consideration, fairly established, will be enforced in equity. *Oglesby* v. *Springfield Marine Bank,* 395 Ill. 37; *In re Estate of Johnson,* 389 Ill. 425; *Klussman* v. *Wessling,* 238 Ill. 568; *Oswald* v. *Nehls,* 233 Ill. 438; *Jones* v. *Abbott,* 228 Ill. 34; *Hudnall* v. *Ham,* 183 Ill. 486; *Barrett* v. *Geisinger,* 179 Ill. 240.

Further questioning the power of the circuit court, appellant contends that Isaac Korn had fully performed his contract by the execution of the will of May 18, 1936, and that the court thus could not decree specific performance of a contract already fully performed. Such a contract is, until the death of the testator, merely executory, and after his death will be enforced as an executory agreement to convey. (*Hudnall* v. *Ham,* 183 Ill. 486; *Crum* v. *Sawyer,* 132 Ill. 443; *Ridgeway* v. *Underwood,* 67 Ill. 419.) As was pointed out in *Oglesby* v. *Springfield Marine Bank,* 395 Ill. 37, "during the lifetime of the promisor the

promisee could not demand specific performance, for such a contract was not capable of specific execution in the lifetime of the promisor, and after his death it was impossible. To avoid defrauding the promisee by the failure of the promisor to make a will, courts of equity seized upon the theory of a constructive trust as a means to prevent such fraud." In the present case the fraud of the testator was not his failure to make a will, but rather in revoking it. The agreement, being executory in its nature, could not take effect until his death. The trial court had jurisdiction to enforce the contract.

The next contention of appellant is that the contract between Isaac Korn and appellees was usurious and void. This theory is based on the contention that the loan of $1700 at 6 per cent interest was made directly from the appellees to Korn, and that any payment over $1700 plus the maximum legal interest is usurious. In the contract entered into by Korn and appellees it was recited that appellees had made efforts to secure money for Korn from a relative of appellees, and that Korn would perform his obligations under the contract "if second parties succeed in negotiating a loan." Nothing is said in the contract with reference to appellees making a direct loan. The same is true of their pleadings. The issue as to who actually loaned the money is raised only indirectly by appellant's answer, which admits "that plaintiffs did lend to Isaac Korn some money, and did take from him his note for $1700 secured by a mortgage upon his real estate." The note and mortgage were not introduced in evidence. The sole testimony bearing upon this was that of appellees' witness, Eva Solomon, who testified that she was a sister of appellees; that she had loaned $1700 to Korn in 1936; that she was a resident of Chicago, Illinois; that her brothers had gotten the money from her in Chicago; that the deal was handled by her brothers and that the money was later repaid to her. On cross-examination she ex-

hibited little memory for dates connected with the transaction; stated that she had never met Isaac Korn; that since her brothers had transacted the deal and the property securing the loan was in Sterling, Illinois, she had allowed them to retain both the note and the mortgage; that she had signed no release or papers in connection with the mortgage; and that all her part in the loan had been transacted when her brothers visited her in Chicago. The master found that Eva Solomon did not make, and was not involved in, the loan to Isaac Korn, but that it was a loan made directly by appellees. The circuit court sustained an exception to this finding and in its decree found "that the plaintiffs arranged with their sister to loan the money to Korn through the plaintiffs." Appellant offered no testimony or evidence to refute that of Eva Solomon, and relies solely on her apparent confusion on cross-examination, and on loose references in the record to the "Scham loan," made largely by counsel for appellant, as the basis for his contention that appellees made a direct loan to Isaac Korn. Examination of the record shows that the chancellor was justified in finding that the loan had been made by Eva Solomon through the agency of appellees.

Following the findings of the master, the filing of objections thereto, and the order that the objections filed should stand as exceptions to the master's report, appellees filed a petition seeking to introduce additional evidence in the form of a certified copy of a mortgage from Isaac Korn to Eva Solomon. This petition of appellees was denied by the chancellor. No cross errors have been assigned and it will not be further considered. Holding, as we do, that the record justifies the conclusion of the chancellor that the loan was made by Eva Solomon, there is no merit to the contention that the loan was usurious.

Appellant's third point is inadequate consideration. Appellant points to that portion of the contract which sets forth the first consideration obligating Korn to make a

will giving his property to appellees, to be "his feeling of friendship for the second parties," and contends that friendship is not a valid consideration. He next points to the second consideration recited in the contract, *i.e.,* "in consideration of various acts performed and courtesies rendered to the first party [Korn] by them," and contends that past consideration is not good or sufficient consideration for the contract here. While each contention may be true as an abstract proposition of law, friendship and past courtesies are not the sole considerations for the contract here, nor are they the considerations relied upon by appellees, but rather the securing of a loan of $1700 for Korn is the one relied upon. Appellant says this was not adequate. The evidence is conclusive that at the time the contract was entered into, Korn needed $1700 to refinance his property, which was apparently his sole possession. It is apparent, too, that Korn was quite concerned over obtaining money, and that he had made several unsuccessful efforts to do so. The value of Korn's land in May, 1936, is a controverted question. The master found both parcels to be worth $5000, which finding was also adopted by the trial court. We have examined the evidence of values offered by both sides. It is widely conflicting. We are of the opinion that the finding of the master and the chancellor was correct.

The question thus resolves itself into whether or not the appellees' promise and act of securing a $1700 loan for Korn were sufficient consideration for his promise to devise to them $5000 worth of real estate. The law permits a wide latitude in determining what shall constitute sufficient consideration for such a contract to devise real estate. In *Whiton* v. *Whiton,* 179 Ill. 32, it was held that consent to a withdrawal from an estate by the promisor of $12,000 more than she was entitled at the time to take from it, was sufficient consideration for her promise to convey at her death to her three children, equally, her estate, which

then was valued at approximately $40,000. In *Osborn* v. *Hoyt*, 184 Pac. 854, 181 Cal. 336, making improvements on land tending toward the amelioration and betterment of the owner's condition, was sufficient consideration for his promise to devise. There are many cases wherein the promise to devise was given for the promise that the promisee would nurse, care for, or provide for the promisor, and they have been held to be sufficient consideration. In the present case, on May 18, 1936, Korn had two pieces of property valued at $5000. He was in danger of losing the most valuable parcel completely and of encumbering the other at least to the extent of the deficiency judgment against him. There is evidence that Korn was anxious to refinance and redeem his property, and that after unsuccessful efforts elsewhere, he sought out appellees in order to borrow the money. Through appellees' efforts he was able to redeem and refinance his property and was able in later years to sell it on a rising market. We are of the opinion that the benefits which accrued to Korn as the result of appellees' efforts to secure the loan constitute a good and valuable consideration.

Appellant also contends that the contract is void for the reason that a fiduciary relationship existed between appellees and Isaac Korn. This argument is based on evidence that Isaac Korn was 79 years of age at the time of the contract; had lost the vision of one of his eyes and had poor vision in the other; was uneducated; that he had numerous eccentricities; that he and appellees were of the same race; and that appellees were successful business men and landowners in Sterling. It is contended that a feeling of trust and confidence was developed by appellees in Korn, by their kindnesses and acts of friendship. Just what these latter were does not appear in the record. The only relationship of the parties shown by the record is that which developed as the result of Korn's need of $1700. It is apparent from the record that Korn continued to

manage his property after entering into the agreement with appellees. That he did so is borne out by the fact that he was able to pay off the $1700 indebtedness to Eva Solomon, secure another loan, and to eventually sell part of his property at a good price. The proof falls far short of showing that Korn placed such confidence in appellees as would enable them to exert the superiority and influence over him necessary to establish a fiduciary relationship. There is no merit to this contention.

Appellant next specifically attacks the decree of the circuit court entered in this case. The decree directed the conveyance of the west half of lot 10. Although no mention of it was made in the proof, in the findings of the master, or in the decree of the court, it was pleaded by appellant, without denial, that the east one-third of the west half of lot 10 had been conveyed by Korn in 1944. Because of this, appellant contends the decree of the circuit court must be reversed because it has directed him to convey a portion of the west half of lot 10, which had already been conveyed. No specific replication or denial was made to this portion of appellant's answer, thus it must be taken as true. (Ill. Rev. Stat. 1943, chap. 110, par. 164(2); *Watt* v. *Cecil,* 368 Ill. 510; *Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364; *Headen* v. *Cohn,* 292 Ill. 210.) The decree was erroneous to the extent that it directed appellant to convey the east one-third of the west half of lot 10. Appellees did not record their contract with Isaac Korn, and no effort is made on their part to invalidate any of the conveyances made by him before his death.

The decree of the circuit court of Whiteside county is reversed insofar as it directs the conveyance of the east third of the west half of lot 10, but in all other respects it is affirmed and the cause is remanded for the entry of a decree consistent with the pleadings as heretofore indicated.

*Affirmed in part, and reversed in part*
*and remanded, with directions.*