*In re* ESTATE OF EDWARD E. BELL, Deceased—(GEORGE P. ZENNER, Plaintiff-Appellee, *v.* BERTRAM BELL, Defendant-Appellant.)

(No. 56328;

First District—July 10, 1972.

Edward J. Bradley, of Bradley and Bradley, of Chicago, for appellant.

Barbara K. Lundergan and Gerald D. Skoning, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

In the Estate of Edward E. Bell, deceased, George P. Zenner brought citation proceedings to recover amounts in two joint bank accounts in the names of the decedent and his adopted son Bertram Bell. The respondent, Bertram Bell, answered the petition and a hearing was held by the court without a jury. The court held that the bank accounts should be returned to the executor of the estate. Bertram Bell appeals to this court. The record presents simply an issue of law as to the effect

and operation of a joint and mutual will executed by husband and wife upon their jointly owned property. The material facts will be stated first.

Edward E. Bell, the deceased, had an adopted son named Bertram Bell. Edward E. Bell's first wife died and, in June of 1937, he remarried. His second wife, Ethel, was then the mother of a son named George P. Zenner. More than 22 years after the marriage, on September 16, 1959, Edward E. Bell and Ethel Bell, his wife, joined in the execution of a will. In this document, each bequeathed to the other all real and personal property owned by either at the time of their death. The surviving testator was to become the initial beneficiary of all real and personal property of the deceased. The survivor was designated as executor and such survivor nominated a third person as his executor. This executor was vested with full power to pay debts and legacies and administered the estate of the survivor. The will further provided that the surviving testator bequeathed all real and personal property in his or her possession at time of death to George Zenner and to Bertram Bell, in equal proportions, share and share alike.

Upon a date not shown by this record, whether before or after execution of this joint will, Ethel and Edward E. Bell created two joint bank accounts. Thereafter, and on October 1, 1968, Ethel Bell died. The joint will was filed in the Circuit Court of Cook County on October 25, 1968. No estate was opened for the deceased, Ethel Bell. Some time thereafter, upon a date not specified in this record, Edward E. Bell converted these two bank accounts to joint ownership between himself and his adopted son, Bertram Bell, with right of survivorship. Edward E. Bell died on August 23, 1969. The joint will of Edward E. Bell and Ethel Bell, dated September 16, 1959, was admitted to probate on September 26, 1969, and the designated executor was duly appointed. It should be specifically noted that neither testator ever attempted to revoke the joint will which remained in full force and effect at all material times. Thus, no question of the right to revoke joint and mutual wills after the death of one testator is presented by this record. As stated, the sole problem is the effect of a joint and mutual will upon property owned by both testators jointly with right of survivorship.

Bertram Bell, respondent to the citation, urges that the joint tenancy bank accounts of Edward E. Bell and himself were valid gifts of the funds on deposit. Also he contends that, upon the death of Edward E. Bell, this joint tenancy property passed automatically by operation of law to the survivor and that such devolution was paramount to the legal operation and effect of the previously executed joint and several will. The argument is made that this same situation obtained at the time of the death of Ethel Bell and that by her death Edward E. Bell as sur-

viving joint tenant became owner of the bank accounts because of the provisions thereof rather than by operation of the joint will.

Upon examination of all of the authorities cited, we conclude, and accordingly hold, that the unrevoked joint and mutual will of Edward E. Bell and Ethel Bell constituted a valid and enforceable contract between them and that this contract impressed a trust upon all property of both testators of every kind and description, including property owned by them as joint tenants with right of survivorship. This trust was properly recognized and enforced by the trial court in requiring that the two bank accounts in question be delivered to the executor of the estate of Edward E. Bell, the surviving testator.

■■■ We find strong authority to support the proposition that the mutual promises of the husband and wife as joint testators constitute a sufficient consideration to effecutuate their execution of a joint will with reciprocal or identical dispositions of property by each to the other and thereafter in accordance with a common plan. A good exposition of this theory appears in *Curry v. Cotton,* 356 Ill. 538, 191 N.E. 307. It is correct, as argued in plaintiff's brief, that the provisions of the will in the case at bar are strikingly similar to the language and provisions of the will in *Curry.* We also find the word "covenanted" contained in the joint will at bar as noted in *Curry.* This would seem to be directly indicative of a contractual arrangement between the two testators. (Note *Curry v. Cotton,* 356 Ill. 538, 546, 547, 191 N.E. 307.) In the instant case, the joint will was filed upon the death of the first testator, Ethel Bell, but no estate was opened for her. Apparently much or all of the property owned by her was jointly held with right of survivorship.

We find the same principles expressed in a number of other cases such as *Keats v. Cates,* 100 Ill.App.2d 177, 189, 241 N.E.2d 645. In *Tontz v. Heath,* 20 Ill.2d 286, 170 N.E.2d 153, the parties executed a joint will. The court carefully noted all of the factors which led to the conclusion that the joint will was executed pursuant to a contract or agreement between the testators. Aside from the fact that the will in *Tontz* disposed of all property that the testators "\* \* \* now own or shall hereafter acquire \* \* \*" we find virtually all of these factors present here so that the same conclusion should be reached regarding the will in the case at bar. Note 20 Ill.2d 286 at page 291.

Perhaps the latest expression of our Supreme Court on this question is set forth in *Helms v. Darmstatter,* 34 Ill.2d 295, 215 N.E.2d 245. There, the court cited *Jusko v. Grigas,* 26 Ill.2d 92, 186 N.E.2d 34, and approved the conclusion that the joint and mutual will itself constituted a contract and that the execution thereof created a presumption that it was the result of mutual trust and confidence. The court held specifically

that the testators intended to merge all of their property into one corpus, specifically including the joint tenancy property, with the intention that, upon death of the survivor, all of their property shoud be enjoyed in approximately equal shares by beneficiaries on both sides of the family. (Note 34 Ill.2d 295 at pages 303 and 304.) In this regard, the joint and mutual will was held to limit the disposition by the survivor of property jointly owned by both testators. In reaching this decision, the court quoted with approval from *Curry* and *Tontz* and also from *Bonczkowski v. Kucharski,* 13 Ill.2d 443, 150 N.E.2d 144.

■■ We believe that the identical reasoning applies in the case at bar. These two testators each had one child who was properly the object of their bounty. The execution of the joint and mutual will was a simple and logical device whereby both of them could make certain that all of their property of every kind was to pass to the survivor and thereafter was to be equally divided between the two sons who constituted their respective families. This was an equitable arrangement and we do not feel that it should be disturbed after the death of one testator by creation of new joint tenancies by the survivor from property which was received from a joint tenancy previously established by both testators. In this regard, the situation here presents in effect a family settlement which should be "* * * especially favored on grounds of public policy upholding the honor and peace of families." (*Ham v. Marshall,* 46 Ill.App.2d 92, 96, 196 N.E.2d 377.) Since arrangements of this kind "* * * contribute to the peace and harmony of families and to the prevention of litigation, they will be supported in equity without an inquiry into the adequacy of the consideration on which they are founded." *Stipanowich v. Seeth,* 349 Ill. 98, 104, 181 N.E. 632.

We note another aspect of this case. There are substantial equities in support of the position taken by George P. Zenner who appears to have been in many important respects a good son to both testators. In addition, a counter-petition was filed by Bertram Bell for contribution because of certain expenses advanced by him. These facts created a right of equitable offset in his behalf which was properly recognized and satisfied by other provisions of the order entered by the trial court with reference to the joint bank accounts.

The order appealed from is correct and proper in all respects. It is affirmed.

Order affirmed.

BURKE and DEMPSEY, JJ., concur.