*In re* ESTATE OF EDITH M. AIMONE, Deceased (Dianne Arnett, Petitioner-Appellee, v. Ruth Jane Burdett, Respondent-Appellant).

Third District   No. 3—90—0895

Opinion filed March 31, 1992.

Hafele, Thiemann & Carter, of Peoria (Bruce Thiemann, of counsel), for appellant.

Gery R. Gasick, of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (Mary A. Corrigan, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

After the death of Edith M. Aimone, Dianne Arnett, decedent's granddaughter, brought an action to have certain funds in the possession of her aunt, Ruth Jane Burdett, declared to be assets of the estate of decedent for distribution according to her will. Burdett appeals from entry of summary judgment in favor of Arnett.

On May 9, 1984, Edith M. Aimone executed a will which left all of her property to her husband John if he survived her and, if he did not survive, then her residence to her granddaughter, Dianne Arnett, and the rest of her property to her two daughters, Ruth Jane Burdett and Edith Nickerson, and to her granddaughter, Dianne Arnett, Nickerson's daughter, in equal shares.

Edith's will contained the following section 5:

"I have made this Last Will and Testament pursuant to a contract and agreement between my husband and me for the purpose of disposing of all our property, whether owned by us as joint tenants, as tenants in common or in severalty, in accordance with a common plan. The reciprocal and other gifts made herein are in fulfillment of this purpose and plan and in consideration of each waiving the right, during our joint

lives, to alter, amend or revoke our respective and mutual Last Wills and Testaments, in whole or in part, by Codicil or otherwise, without notice to the other, or under any circumstances after the death of the first of us to die."

According to affidavits in the record, after John suffered a stroke and was hospitalized, Edith became concerned that his medical bills would deplete all their savings. On January 27 and 28, 1988, she withdrew $75,000 from three accounts belonging to John and Edith Aimone jointly and placed cashier's checks in that amount in her safety deposit box. Each cashier's check was payable to Edith Aimone or Ruth Burdett and Edith Nickerson. John died on March 15, 1988. In October of the same year Edith Aimone was a patient in a nursing home because of gangrene developing in one leg. She signed a power of attorney authorizing her two daughters to sign checks. On October 17, 1988, pursuant to the power of attorney, Burdett and Nickerson converted the cashier's checks into certificates of deposit payable to Edith Nickerson and Ruth Burdett.

According to affidavits and other documents in the record, John and Edith together gave $500 each to Dianne Arnett, her husband Kevin Arnett, Ruth Burdett, and Edith Nickerson on January 12, 1987, and on July 31, 1987, purchased a $4,000 certificate of deposit in the names of Arnett, Burdett, and Nickerson. After John's death, Edith gave Dianne Arnett $500 for car repairs on June 19, 1988, and paid for Dianne's airplane tickets to attend John's funeral. Also, Edith deeded her residence in Peoria to Arnett on July 15, 1988.

After Edith died on March 23, 1989, Burdett and Nickerson as co-executors filed a small estate affidavit and inventory in the circuit court of Peoria County. Neither document listed the $75,000 as part of the estate. Dianne Arnett petitioned the court for an order declaring that the *inter vivos* gift of $75,000 from Edith Aimone to her daughters was in breach of the will contract contained in section 5 of her will and, hence, was void.

Burdett filed a motion to dismiss, and Arnett filed a motion for summary judgment. The trial court denied Burdett's motion to dismiss and also denied Burdett's subsequent motion to continue the hearing on the summary judgment motion to allow more discovery. The trial court granted the motion for summary judgment, and this appeal resulted.

Burdett asserts two errors compelling reversal of the judgment entered in the trial court: (1) that summary judgment in favor of

Arnett was erroneous under the law as applied to the facts of this case and (2) that Burdett's motion for a continuance should have been allowed.

We first must examine the summary judgment and the pleadings and supporting affidavits upon which it is based. The motion for summary judgment recites that Edith and John Aimone executed joint and mutual wills on May 9, 1984; that Edith's will constituted a binding contract between John and Edith; that at Burdett's suggestion, on January 27 and 28, 1988, Edith withdrew $75,000 from joint accounts of John and Edith by means of cashier's checks payable to Edith Aimone or Ruth Burdett and Edith Nickerson; that John was not present when the checks were issued; that John died on March 15, 1988; that on October 17, 1988, Burdett and Nickerson used the checks to obtain certificates of deposit payable to Burdett and Nickerson, acting pursuant to a power of attorney given by Edith to Burdett and Nickerson; that the transfer of $75,000 to Burdett and Nickerson by Edith was for reason of convenience and not intended to contravene the terms of Edith's will; that an *inter vivos* gift of the $75,000 would breach the terms of the contract between Edith and John as set out in section 5 of Edith's will; and that there is no genuine issue of material fact that the transfer of $75,000 to Burdett and Nickerson was in contravention of Edith's will. The motion as it appears in the record on appeal was not sworn to and, in fact, was not even signed.

Attached to the motion as exhibits were copies of Edith's will and the cashier's checks and certificates of deposit in question; an affidavit by Burdett signed on September 22, 1989, and attached to a motion filed by Burdett earlier in this cause; and an affidavit by Nickerson signed on October 26, 1989, and attached to Arnett's response to the earlier motion by Burdett.

According to the affidavit of Burdett, when Edith became concerned about the amount of John's medical expenses in early 1988, she went to two Peoria banks accompanied by Burdett and Nickerson to withdraw money from her joint savings accounts. At each bank, Edith allegedly told a bank official that the cashier's checks should be in her name and also the names of her two daughters "as she wanted them to have the money equally if anything happened to her." Burdett further averred that the subsequent purchase of certificates of deposit in the names of Burdett and Nickerson was done "because their mother had previously indicated to the bank officials when purchasing the three cashier's checks that she wanted her daughters to have the proceeds if anything happened to her."

Nickerson's affidavit directly contradicted that of Burdett with regard to statements by Edith at the time the $75,000 was withdrawn. According to Nickerson, Edith expressed an intent that the funds be divided equally between Arnett, Burdett, and Nickerson in accordance with the terms of her will and that she agreed to have only two names with hers on the checks only after Burdett suggested that it would be difficult to obtain Arnett's signature if funds were needed since Arnett lived in Texas. Nickerson stated that Edith agreed "for the convenience of the parties, with the understanding that in the event of her death the funds from the cashier's check would be divided equally" between Arnett, Burdett, and Nickerson. Nickerson further attested, "At *no* time was there any discussion that the money was to be considered a gift to affiant and Ruth J. Burdett only." (Emphasis in original.)

Burdett subsequently filed a response to the motion for summary judgment in which she asserted that the will of Edith alone does not constitute a joint and mutual will and that Arnett failed to prove by clear and convincing evidence that Edith intended to enter into an irrevocable binding contract with John which would preclude gifts during her lifetime. Burdett also claimed that issues of material facts exist as to Edith's donative intent and as to the question of notice to John.

Attached to this response is an affidavit by Burdett denying that Edith stated that she wanted the funds to be divided equally among Arnett, Burdett, and Nickerson. Also attached are excerpts from discovery depositions given by Nickerson and Arnett in which they indicated that Edith never told them that her will prevented her from making gifts during her lifetime.

Burdett contends on appeal that section 5 of Edith's will does not alone evidence a binding, irrevocable contract between Edith and John and, even if a contract did exist, it did not become irrevocable until after the death of John. Thus, she argues that the language of section 5 does not prevent *inter vivos* gifts by the parties during their lifetimes.

The legal implications of various types of wills were examined in *Frazier v. Patterson* (1909), 243 Ill. 80, 84, 90 N.E. 216, 217:

> "Wills may be joint or mutual or both joint and mutual. A joint will is one where the same instrument is made the will of two or more persons and is jointly signed by them. It is not necessarily either mutual or reciprocal. Mutual wills may be defined as the separate wills of two persons which are reciprocal in their provisions. A will that is both joint and mu-

tual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other. *** Mutual wills *** may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is the consideration for the other ***.''

In the case at bar, Edith's will purports by its own language to be a mutual will executed pursuant to a contract with John. Some general rules concerning mutual wills were summarized in *Monninger v. Koob* (1950), 405 Ill. 417, 422-23, 91 N.E.2d 411, 414, as follows:

"Mutual wills are not, generally, of themselves sufficient evidence of a contract and the consideration to support it must be *aliunde* the wills. (*Curry v. Cotton*, 356 Ill. 538[, 191 N.E. 307].) Courts of equity look with jealousy upon the evidence offered in support of such a contract and will weigh it in the most scrupulous manner. (*Sloniger v. Sloniger*, 161 Ill. 270[, 43 N.E. 1111].) It is also clear that, while a person owning property may make a contract to dispose of it by will in a particular way, (*Scham v. Besse*, 397 Ill. 309[, 74 N.E.2d 517]; *Oswald v. Nehls*, 233 Ill. 438[, 84 N.E. 619],) such contracts do not stand on an especially favored footing, and a court will be more strict in examining into the nature and circumstances of such agreements than with other contracts. *Kaiser v. Cobbey*, 400 Ill. 214[, 79 N.E.2d 604]; *Klussman v. Wessling*, 238 Ill. 568[, 87 N.E. 544]."

■■ ■ Where an unrevoked joint and mutual will constitutes a valid and enforceable contract between husband and wife, it has been held that the contract impresses a trust upon all property of both testators. (*In re Estate of Bell* (1972), 6 Ill. App. 3d 802, 286 N.E.2d 589.) The same would be true of mutual wills executed pursuant to a binding contract. However, Arnett is required to establish by the clearest and most convincing evidence that the alleged contract was in existence at the time of the transfer of $75,000 and that it was certain and definite in all its terms. *Jordan v. McGrew* (1948), 400 Ill. 275, 79 N.E.2d 622; *National Bank v. Emerson* (1948), 335 Ill. App. 494, 82 N.E.2d 382.

Here, there is no evidence extrinsic to Edith's will itself concerning the circumstances or intentions of the two parties at the time she executed her will. The language contained in section 5 of Edith's will clearly states her intention to enter into a binding contract that was expressly revocable during their lives with notice to the other and irrevocable upon the death of one party. This situation is similar to that in *Freese v. Freese* (1977), 49 Ill. App. 3d 1041, 364 N.E.2d 983, where the mutual wills of a husband and wife expressly stated that the wills were to be considered to be the plan they had made for the disposition of all their property. The court there held that the contract embodied in their mutual wills became irrevocable as to the survivor upon the death of the first testator and prevented the survivor from making a subsequent transfer of the parties' assets not contemplated or allowed by the agreement.

Burdett argues that the language of section 5 is ambiguous, but we do not agree. We believe the language is a clear and convincing disclosure of the intent of Edith to make a mutual will with John which would have the binding effect of a joint and mutual will so that the will of one could not be revoked without notice to the other. (*Cf. Buehrle v. Buehrle* (1920), 291 Ill. 589, 126 N.E. 539.) The language of section 5 closely resembles that contained in a joint and mutual will in *In re Estate of Kritsch* (1978), 65 Ill. App. 3d 404, 382 N.E.2d 50, where the wills of both husband and wife contained a statement of their agreement to dispose of their property according to a specific plan and in consideration of their mutual bequests, with the further agreement that their wills would not be revoked, changed, or destroyed by either without the full consent and agreement of the other. The court ruled that in the case of such mutual and reciprocal wills, "a judicial presumption arises in favor of the existence of the contract from the existence of the mutual wills themselves." (65 Ill. App. 3d at 408, 382 N.E.2d at 53.) Thus that court found that additional testimony was not needed to establish the existence of a binding contract between the parties.

The court in *Kritsch* relied in part on *In re Estate of Willis* (1975), 33 Ill. App. 3d 279, 337 N.E.2d 35, where this court held that a contract between the two testators was established by the language of a joint and mutual will without resort to other testimony.

In the case at bar, if we had before us the mutual wills of both Edith and John, we would reach the same conclusion as the courts in *Kritsch* and *Freese* that the language of section 5 was suf-

ficient to prove the existence and terms of a binding contract between the parties. Unfortunately, the will of John is not a part of the record on appeal and was not before the trial court. Arnett has the burden of establishing that a binding contract was made in 1984 by the execution of two mutual wills. Without John's will, or some evidence of its provisions and an explanation for its absence, we cannot invoke a judicial presumption that Edith was bound by a contract that prevented gifts to Burdett and Nickerson. All of the cases cited to us involved either a joint will executed by both parties or two separate mutual wills, both of which were before the court.

Since we have neither John's will nor any extrinsic evidence concerning the circumstances surrounding the drafting and execution of his and Edith's wills, we conclude that Arnett has failed to establish a necessary element of her case, *i.e.*, that Edith was bound by a contract with John requiring that her property be disposed of as provided by her will. We reverse the judgment of the trial court and remand for further proceedings.

██ Since this cause is being remanded, we elect to address two of Burdett's arguments which may be raised in the course of additional proceedings in the circuit court. Burdett argues that even if section 5 does establish a contract between John and Edith, it is not irrevocable until the death of John. She says that, since the transfers here occurred before John's death, Edith was acting within her rights in revoking the previously agreed to testamentary disposition. This argument ignores the express provision of section 5 that neither party may revoke without notice to the other. Thus, by its own terms the alleged contract is revocable, but only with notice. The burden of proving that notice was given would be upon Burdett, the party relying upon revocation. *Curry v. Cotton* (1934), 356 Ill. 538, 191 N.E. 307.

██ Another contention advanced by Burdett is that the contract only prohibits Edith from altering her testamentary disposition and does not prevent the *inter vivos* gifts in question here. As we have previously indicated, mutual wills made pursuant to a binding contract have the same legal effect as joint wills. (*E.g., Buehrle v. Buehrle* (1920), 291 Ill. 589, 126 N.E. 539.) The disposition of all the joint property is controlled by the contract set forth in the mutual wills, and the intended testamentary plan cannot be defeated by *inter vivos* gift. *In re Estate of Bell* (1972), 6 Ill. App. 3d 802, 286 N.E.2d 589.

Burdett also contends that the trial court erred in denying her a continuance. Since we are reversing the summary judgment and remanding for further proceedings, that issue is moot and need not be considered here.

For the reasons stated, we reverse the summary judgment and remand for further proceedings.

Reversed and remanded.

GORMAN and HAASE, JJ., concur.