MOLINE NATIONAL BANK, Ex'r of the Estate of Albert Flemming, Deceased, Plaintiff-Appellee, *v.* WILFORD FLEMMING *et al.*, Defendants-Appellants.

Third District    No. 80-216

Opinion filed December 24, 1980.

F. Joseph Ryan, of East Moline, for appellants.

Robert R. Ruud, of Moline, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On May, 4, 1959, Albert Flemming, age 65, and Eva Kent Dodd, age 58, were married. Albert had previously been married one time but had no children. Eva had two previous marriages and from one of these marriages had a son, Brian Kent. On February 17, 1966, Albert and Eva executed their joint and mutual will and a contract attached thereto.

The pertinent provisions of the joint and mutual will are as follows:

"We, Albert Flemming and Eva K. Flemming, * * * do each mutually in consideration of the other making this Will, and the provisions made herein by each of us in favor of the other, make, publish and declare this to be our Last Will and Testament, intending to provide herein for the ultimate disposition of all of our property, be it in joint tenancy, tenancy in common or in our individual names, and we agree that the same cannot be changed or varied without the consent in writing of the other, * * *.
* * *

Third: It is our joint will and desire that the survivor of us shall immediately become possessed in fee simple of all the rest, residue and remainder of the property of whatsoever name and nature and wheresoever situate of which the other may die seized or possessed.

Fourth: At the death of the survivor of us * * * all the rest, residue and remainder of the property of the survivor * * * be converted by our Successor Executor * * * into cash and distributed to the following persons in the following proportions:

A. One half (½) thereof to Brian E. Kent, the son of the testator, Eva K. Flemming.

B. One half (½) thereof to Brian E. Kent, as Trustee for the children of the said Brian E. Kent, * * *.

We each hereby nominate and appoint the other as Executor * * * then we nominate and appoint Moline National Bank * * * as Successor Executor * * *."

The contract signed by Albert and Eva and attached to their joint and mutual will provided as follows:

> "CONTRACT TO EXECUTE JOINT LAST WILL AND TESTAMENT
>
> This contract, made and executed, in duplicate, this 7th day of February, 1966, between ALBERT FLEMMING, party of the first part, and EVA K. FLEMMING, party of the second part.
>
> WITNESSETH
>
> Whereas, the parties hereto do desire to duly execute a joint Last Will and Testament, which disposes of their respective estates in accordance with their individual desires and mutual agreement and which said joint will is dated and being executed concurrently with this contract; and
>
> Whereas, they desire to make certain that said joint Last Will and Testament cannot be changed, varied, altered or revoked by either of them without the consent in writing of the other, or as provided in the following paragraph.
>
> Now, therefore, in consideration of the premises and the execution by each of the parties hereto of said joint Last Will and Testament dated and executed concurrently with this contract, the parties hereto do agree for themselves, their respective heirs, devisees and assigns that said joint Last Will and Testament will not be changed, varied, altered or revoked by either of them without the consent in writing of the other. In the event our marriage to each other should terminate by divorce or annulment, this contract shall then be automatically cancelled and be of no further force or effect whatsoever."

On November 26, 1969, both Albert and Eva executed a codicil to their last will which has no pertinence to the determination of the issues raised in this appeal.

On March 8, 1973, Eva K. Flemming died. The joint will, together with the contract and codicil, was filed with the clerk of the circuit court of Rock Island County. An inheritance tax return was filed which showed that at the time of Eva's death she held 2,899.084 shares of Investors Mutual, Inc., with Albert Flemming named as beneficiary. The account was valued at $30,237.45. The return further showed that there were accounts in a savings and loan association and in banks in the names of Eva K. Flemming, the decedent, and Albert Flemming as joint tenants, having a value of $30,116.44.

After the death of Eva, Albert created jointly held accounts or trust accounts in the sum of $47,994.72 in his name and the name of Henry W. McCandless. The *cestui que* trust of the trust accounts was McCandless.

Albert also created a trust account in the sum of $15,679.12 in which he was trustee for Wilford Flemming.

Albert Flemming died on January 11, 1979, and as the result of the joint tenancy and trust arrangements there were no assets in his estate. On February 9, 1979, the joint will of Albert and Eva was admitted to probate and the plaintiff, Moline Bank, was appointed executor of his estate. The executor brought suit to enforce the joint will and thereby recover as estate assets all the accounts which benefitted McCandless. Wilford Flemming, a nephew of Albert, was dismissed from the suit pursuant to a settlement stipulation. The plaintiff bank prevailed in its action to recover assets, and this appeal ensued.

The determinative question in this appeal is whether a valid contract existed between Albert Flemming and Eva Flemming under the terms of their joint and mutual will and the contract attached thereto.

■■ The defendant McCandless argues that there was no valid contract but a *nuda pactio obligationem, non parit* (a naked agreement, without consideration, which does not beget an obligation). We disagree with the defendant, for in the instant case we have presented a situation where this court is not limited to the four corners of the will executed by Albert and Eva in order to determine whether it is contractual in nature, but in addition the intent of the parties is buttressed by a separate, independent contract executed by the parties of even date with the will and attached thereto.

Directing our attention to the contract we find a clear expression of their intent to execute a joint will which cannot be altered, revoked or varied without consent in writing to the party who desires to make such a change from the other.

The defendant attempts to assert that since the assets of the testators were joint prior to the death of Eva and consequently did not pass by virtue of the will, then such will did not create a contract enforceable by a third party.

■■ This assertion fails to be persuasive in light of the provisions of the will which declare Albert and Eva's intent "to provide herein for the ultimate disposition of all of our property, be it in joint tenancy, tenancy in common or in our individual names * * *." This language indicates that the parties were aware of the fact that they were the joint owners of property, yet they desired to enter into an arrangement as to its disposition. A similar situation presented itself regarding jointly held real estate in the case of *First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532. In *Christenson* the Presbyterian Church as a third-party beneficiary under a contract embodied in a joint and mutual will by husband and wife devising certain property to the church upon the death of the survivor of them, brought action to set aside and cancel deeds

which purported to convey the property from the surviving spouse to her nieces and nephews. During the lifetime of the testators the real property in question was vested in them as joint tenants. The will provided explicitly that the testators had entered into an agreement for the express purpose of disposing of all of their property "whether owned by us as joint tenants, as tenants in common or in severalty, * * *." Our supreme court held that although title to real estate held in joint tenancy does not pass under a joint and mutual will, such real estate can be the subject of a contractual agreement contained in a mutual will and a court of equity, under appropriate circumstances, will enforce the agreement and limit the surviving tenant's disposition of the property.

The case of *Christenson* differs from the instant case in two respects. First, the contract for the disposition of property in *Christenson* was solely embodied in the will. The testators' intent was not fortified and buttressed by a separate contract such as we have in the instant case. Secondly, in *Christenson* the property in question was realty rather than personalty. In the instant case all of the assets consisted of personalty, yet we can find no logical reason why there should be one rule for realty and a converse one for personalty. The intent of the parties should govern, not the nomenclature of the assets acquired by them. (See also *In re Estate of Bell* (1972), 6 Ill. App. 3d 802, 286 N.E.2d 589.) In *Bell* the reviewing court held that an unrevoked joint and mutual will between husband and wife constituted a valid enforceable contract between them which impressed a trust upon all property of both testators of every kind and description, including two jointly held bank accounts. An attempt was made by the husband, surviving spouse, to dispose of the accounts contrary to the terms of the joint and mutual will and the reviewing court affirmed the trial court's order directing that the bank accounts in question be delivered to the executor of the surviving testator.

■■ The defendant urges that there was a failure of sufficient consideration to support a contract in the instant case. We again direct our attention to *In re Estate of Bell*, where the question of what constituted sufficient consideration was presented and the court stated:

> "We find strong authority to support the proposition that the mutual promises of the husband and wife as joint testators constitute a sufficient consideration to effectuate their execution of a joint will with reciprocal or identical dispositions of property by each to the other and thereafter in accordance with a common plan." 6 Ill. App. 3d 802, 804, 286 N.E.2d 589, 590.

We find the mutual promises, reciprocal disposition and a common plan in the case before us. We note that the court in *Bell* stressed the fact that no effort had been made to revoke the joint and mutual will. We are cognizant of the fact that the revocation of the will in the instant case

would not have effected the disposition of the assets of Albert and Eva, with the exception of two rings. We are, however, cognizant of the fact that during her lifetime Eva made no attempt to raid or plunder the joint accounts, even though as a joint tenant she could have done so. She lived up to her agreement as set forth in the will and contract.

■■ The defendant further asserts that the promises between Albert and Eva were not mutual. This argument is premised upon the fact that the will provided for the heirs of Eva only to receive the entire estate upon the death of the survivor. The thrust of this argument loses its poignancy when examined in the light of the circumstances surrounding the parties. Albert had no children; his closest relatives were nephews. Eva had a son and grandchildren. Eva's heirs could be classified as immediate family, while Albert's next of kin were removed relatives. That Albert had no compelling desire to see his next of kin provided for equally with Eva's descendants is amply illustrated by his actions after Eva's death. At such time he established joint accounts and a trust relationship which benefitted the defendant McCandless to the extent of establishing him as the recipient of $47,994.72. He made an effort to benefit one of his nephews in the sum of $15,679.12. It is evident that Albert had neither before or after Eva's death any feeling that his next of kin should be remembered on a par with the family of Eva.

■■ The provisions of the will of Albert and Eva have heretofore been set forth and defendant calls attention to the third paragraph of the document which gives to the survivor "in fee simple" all the rest, residue and remainder of the property. It is the defendant's contention that the words "in fee simple" resulted in granting unto the survivor full freedom to spend the income and principal and the further right to make a gift of whatever was left to third-party beneficiaries. With this contention we cannot agree, since it is overwhelmingly clear that the parties made a studied and determined effort to effect a valid contractual disposition of their property. Not only was the will contractual in nature, but a further precaution was taken when a separate contract setting forth their agreement to make a joint and mutual will was executed by the parties. To hold that the words "fee simple" would grant unto the survivor of the testators the power to dispose of the property in any manner desired by the survivor would result in defeating the crystal-clear intent of Albert and Eva. Their studied and conscientious efforts to provide a planned disposition of their property would all be for naught.

Substantiating this conclusion is the examination of language found in Annot., 85 A.L.R.3d 8, 59 (1978), entitled "Transfer in Avoidance of Contract or Will," which is as follows:

> "Regardless of the wording of a joint or mutual will, or the accompanying agreement, if property is left to third-party benefi-

ciaries who are to take upon the death of the survivor, most courts consider any inter vivos transfer made by the survivor with an intent to avoid the agreement, to be improper."

The power of the surviving spouse Albert over the property he obtained upon the death of Eva is described in 97 C.J.S. *Wills* §1367(2), at 307-09 (1957), which states:

"Where an agreement as to mutual wills does not define the survivor's power over the property, but merely provides as to the disposition of the property at his death, the survivor may use not only the income, but reasonable portions of the principal, for his support and for ordinary expenditures, and he may change the form of the property by reinvestment and the like; but he may not give away any considerable portion of it or do anything else with it that would be inconsistent with the spirit or the obvious intent and purpose of the agreement."

Lastly, it is the defendant's contention that as an *inter vivos* donee he cannot be deprived of the use of the accounts established for him by Albert Flemming without a showing by the plaintiff that he, the donee, was guilty of fraud, collusion or sharp practices or that a fiduciary relationship existed between him and the plaintiff.

■■ We need not consider this issue raised by the defendant for we have determined that the surviving testator, Albert Flemming, did in fact breach the contractual terms of the joint and mutual will, and having made such determination it is immaterial whether the breach was instigated by a third party. The precise question presented to this court is whether Albert Flemming breached the terms of his joint will and contract by transferring assets to the defendant. He did, and hence the trial court was correct in setting aside these transfers and ordering that the assets be returned to the plaintiff Moline National Bank. See *Smith v. Smith* (1930), 340 Ill. 34, 172 N.E. 32; *Chambers v. Appel* (1945), 392 Ill. 294, 64 N.E.2d 511.

For the reasons set forth the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.