NO. 4-05-0446

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Estate of LEA J. ERICKSON, Deceased; | ) ) | Appeal from Circuit Court of |
| WILLIAM R. ERICKSON, | ) | Vermilion County |
| Plaintiff-Appellee, | ) | No. 03P203D |
| v. | ) | |
| JULIE A. SCHACKMANN, Individually | ) | |
| and as Trustee; SANDRA McDOUGAL, a/k/a | ) | |
| SANDRA MacDOUGAL; and SEAN DOGGETT, | ) | Honorable |
| Defendants-Appellants. | ) ) | Michael D. Clary, Judge Presiding. |

JUSTICE KNECHT delivered the opinion of the court:

In July 2003, defendants, Julie A. Schackmann, Sandra McDougal, and Sean Doggett, each purchased for $10 a parcel of real property from Lea J. Erickson, just five days before Lea's death. After Lea died, William R. Erickson filed suit to challenge the transfers and argued the transfers violated the terms of the joint and mutual will Lea executed with her husband Charles R. Erickson. The Vermilion County circuit court agreed with William. Defendants appealed. On appeal, defendants contend (1) the joint and mutual will authorized the property transfers; and (2) William waived any challenge to the propriety of the transfers by not objecting to the final accounting of Charles's estate. We affirm.

I. BACKGROUND

On April 4, 1994, Charles R. Erickson and Lea J. Erickson executed a document they entitled their "Last Joint and Mutual Wills and Testaments." In this will, the testators made

the following bequests:

> "We give, devise[,] and bequeath our
> entire estates of whatsoever kind and nature
> and wheresoever the same may be situated to
> the survivor of either of us, as the
> survivor's property absolutely. After the
> death of the survivor of us, we give,
> devise[,] and bequeath twenty percent (20%)
> of our entire estate to our daughter Julie A.
> Schackmann, or to her descendants, per
> stirpes. The other eighty percent (80%) of
> our estate, after the death of the survivor
> of us, shall be delivered by the executor to
> Julie A. Schackmann, as trustee of the
> following trust *** for the benefit of our
> other four (4) children, William R. Erickson,
> Charlene L. Stout, Richard P. Erickson, and
> Sandra L. McDougal."

Charles died in January 2000. The will was admitted to probate, and Lea was appointed executrix of his estate. In March 2002, Lea, in her role of executrix, petitioned the court to permit "her to transfer real estate, either to third parties or to herself individually as the sole heir of Charles." The court gave Lea this authority. In her June 2002 final report, Lea informed the court and the other beneficiaries under the will "[t]hat all real estate that the estate was formerly possessed of

has been transferred to" herself pursuant to court order. The court approved Lea's final report and account.

Lea died on July 15, 2003. According to the death certificate, Lea died from a condition she suffered for approximately three years. Five days before her death, Lea conveyed three tracts of real property by quitclaim deed. In one conveyance, Lea conveyed two lots to Schackmann in exchange for $10. In the second transaction, also in exchange of $10, Lea conveyed property to McDougal. In the third transaction, also for consideration of $10, Lea transferred property to Doggett, a grandson.

In September 2003, William filed a complaint, seeking the return of the three conveyed parcels to the estate. In the complaint, William asserted the will was a joint and mutual will that prohibited Lea from distributing property in a way that would contradict the dispositive scheme of the will.

The circuit court agreed with William and found the will was a joint and mutual will. The circuit court concluded Lea's actions in attempting to deed property away were "improper" in that they violated "the terms and conditions of the joint and mutual Will." The court rejected the argument William waived any challenge to the transfers. The court further found no just cause to delay the appeal or enforcement of the order under Supreme Court Rule 304 (155 Ill. 2d R. 304). This appeal followed.

## II. ANALYSIS

Both parties concede the will here is a joint and mutual will. A will is a joint will if it is executed by more than one person to dispose of property "owned jointly or in common by them or in severalty by them." Curry v. Cotton, 356 Ill. 538, 543, 191 N.E. 307, 309 (1934). Upon the death of the first testator to die, the joint will is subject to probate as that testator's will. After the death of the surviving testator, it is subject to probate as the survivor's will. Curry, 356 Ill. at 543, 191 N.E. at 309. Mutual wills are separate documents involving more than one testator. The terms of these wills are reciprocal, by which each testator disposes the property to the other. A will is joint and mutual if it is "executed jointly by two or more persons with reciprocal provisions and shows on its face that the bequests are made one in consideration of the other." Curry, 356 Ill. at 543, 191 N.E. at 309.

The parties are correct; Charles and Lea executed a joint and mutual will. It is one document, executed by both testators. The testators referred to the will as "our Last Joint and Mutual Wills and Testaments." The gifts were reciprocal to the surviving spouse, the property was pooled together, and it was disposed of among their children in approximately equal shares. See Rauch v. Rauch, 112 Ill. App. 3d 198, 201, 445 N.E.2d 77, 80 (1983) (outlining the considerations this court employs when evaluating whether a will is joint and mutual).

Joint and mutual wills are not only testamentary but

also contractual.  They are "executed pursuant to a contract between the testators, requiring the survivor of them to dispose of the property as the will's provisions instruct."  Rauch, 112 Ill. App. 3d at 200, 445 N.E.2d at 79.  This contract, embodied in a joint and mutual will, estops the survivor of the testators, "from disposing of the property other than as contemplated in the will."  Rauch, 112 Ill. App. 3d at 200, 445 N.E.2d at 80.

Conceding the contractual nature of the will, defendants contend the contract allowed Lea to transfer the property.  Defendants emphasize the term "absolutely" in the gift to the surviving spouse: "We give *** our entire estates of whatsoever kind and nature and wheresoever the same may be situated to the survivor of either of us, as the survivor's property absolutely."  (Emphasis added.)  Defendants further argue the phrasing of the gift indicates the testators intended the surviving spouse could do whatever he or she wished with the property.

William disagrees.  William cites Rauch and Helms v. Darmstatter, 34 Ill. 2d 295, 215 N.E.2d 245 (1966), and argues "[t]he use of the word 'absolute' in describing the  bequest or devise to the surviving testator is illogical if to do so would upset the common dispositive scheme of the later paragraphs of the will."

Defendants' argument centers on the term "absolutely."  When interpreting a will, however, we focus not on one provision or section, but we consider the will in its entirety with the

goal of ascertaining and, if possible, giving effect to the intent of the testator.  In re Estate of Overturf, 353 Ill. App. 3d 640, 642, 819 N.E.2d 324, 327 (2004).  This approach reflects the approach taken in Helms, 34 Ill. 2d at 301-02, 215 N.E.2d at 249, in which our supreme court considered whether a joint and mutual will with a similar bequest to the surviving spouse was revocable.

In Helms, the testators, spouses George Lortz and Lena Lortz, executed a joint and mutual will which bequeathed to the survivor all of their property "'as his or her absolute property forever.'"  (Emphasis added.)  Helms, 34 Ill. 2d at 299, 215 N.E.2d at 247-48.  The joint will further provided after the death of the survivor, their property was to be merged and sold, with the proceeds of the sale to be distributed among their relatives.  Helms v. Darmstatter, 56 Ill. App. 2d 176, 178, 205 N.E.2d 478, 480 (1965).  George died on March 13, 1948.  In April 1951, Lena executed a codicil by which she altered the bequests to benefit her own relatives.  See Helms, 34 Ill. 2d at 297, 215 N.E.2d at 246.

On appeal in Helms, the issue was whether Lena, who was given the property of the estate as her "'absolute property forever,'" could alter the terms of the joint will by codicil after George's death.  The court, considering the will as a whole, held Lena had not been given power to change the disposition:

"The two clauses must be read together and we

feel that the equal treatment of each side of the family is so clearly provided for that it would not be logical to consider that the testators intended to give the survivor the power to upset that scheme by a contrary testamentary disposition by using the one word 'absolute'." Helms, 34 Ill. 2d at 301, 215 N.E.2d at 249.

In Rauch, 112 Ill. App. 3d at 201, 445 N.E.2d at 80 (Fourth District), this court interpreted another joint and mutual will that gave the surviving spouse "'all of the property *** to be his or her absolute property.'" (Emphasis added.) The joint and mutual will pooled all interests into a common fund and, after the death of the surviving spouse, disposed of the property equally among the couple's four children. Rauch, 112 Ill. App. 3d at 201, 445 N.E.2d at 80. On appeal, this court considered when the interests of the children vested, whether on the earlier death or on the death of the surviving spouse. See Rauch, 112 Ill. App. 3d at 199, 445 N.E.2d at 79. In deciding the interests of the children vested on the death of the first testator to die, this court rejected the argument the term "absolute" gave the surviving spouse complete power over the property, "including the power to change the dispositive scheme." Rauch, 112 Ill. App. 3d at 202, 445 N.E.2d at 80. This court interpreted Helms as concluding "where equal treatment for the family is provided in the will, it would be illogical to

interpret the will as giving the survivor the power to upset that dispositive scheme."  Rauch, 112 Ill. App. 3d at 202, 445 N.E.2d at 80.

When we consider this will as a whole, we find the testators created a dispositional scheme by which the survivor of the two would receive all of their property for use during his or her lifetime.  It is also equally clear, however, the testators intended the survivor of the two would dispose of their property almost equally among their children.  As in Helms and Rauch, the term "absolute" or "absolutely" does not give the surviving spouse free reign to disrupt the agreed-upon dispositional scheme.

Defendants contend Rauch and Helms, at best, establish Lea could not revoke the joint and mutual will by codicil or a later will.  They assert Lea, absent a will or codicil, could change the disposition by giving away her property.  We disagree. Rauch establishes that testators, in creating a joint and mutual will, contract to dispose of their property in a certain way. See Rauch, 112 Ill. App. 3d at 200, 445 N.E.2d at 79.  That contract becomes irrevocable upon the death of the first testator to die.  Here, five days before her death, Lea attempted to circumvent both the terms of the joint and mutual will and her contractual obligations thereunder to dispose of her property by essentially giving it away.  Lea's actions violate the spirit and purpose of the joint and mutual will, as well as the implied duty to act in good faith--a duty that is part of every contract.  See

Bank One, Springfield v. Roscetti, 309 Ill. App. 3d 1048, 1059-60, 723 N.E.2d 755, 764 (1999) ("Good faith requires the party vested with contractual discretion to exercise it reasonably, and he may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties"). The term "absolutely" does not give Lea the power to upset the dispositive scheme.

We agree with defendants that Helms, Rauch, and other decisions (see, e.g., Orso v. Lindsey, 233 Ill. App. 3d 881, 887, 598 N.E.2d 1035, 1039 (1992)) leave open the question to what extent the surviving spouse may use the property upon the death of the other testator: "It may well be that they intended that the survivor should have the absolute right to use the entire corpus for life, but only upon the condition that the property owned by the survivor upon his or her death would pass in accordance with the terms of the joint will." Helms, 34 Ill. 2d at 301-02, 215 N.E.2d at 249. Interesting questions remain as to whether Lea could have sold some property to make a modest gift to a charity or to travel the world. We need not analyze those possibilities, and we need not decide whether Lea, after Charles's death, could have sold or given this property at a different time or under different circumstances. The undisputed facts establish Lea disposed of the property five days before her death. She received $10 for each parcel. No facts establish Lea could have had any intention other than to circumvent the dispositional scheme. These transfers are not permitted by the

will.

Defendants' cases are distinguishable. The court's statement in Orso, that the surviving spouse had the right to give property away during the survivor's lifetime, was dicta. The Orso court considered whether the survivor could execute the will after his spouse's death, and not whether the survivor could give away property on his deathbed. See Orso, 233 Ill. App. 3d at 882, 598 N.E.2d at 1036. In addition, the Orso court agreed "[t]he power to use the property however the surviving spouse sees fit does not mean he or she also has the power to change the testators' dispositive scheme in contravention of their express agreement or contract." Orso, 233 Ill. App. 3d at 887, 598 N.E.2d at 1039. Moreover, defendants' case, King v. Travis, 170 Ill. App. 3d 1036, 1043-44, 524 N.E.2d 974, 979 (1988), did not involve a joint and mutual will. Because the will was not a joint and mutual will, there were no contractual restrictions on the disposition of property in King, as there are here.

Defendants next argue William forfeited any challenge to the conveyances because he did not object at the closing of Charles's estate to the transfer of property to Lea in fee simple. Defendants emphasize William was informed of this transfer by the final report. Defendants argue under section 24-2 of the Probate Act of 1975 (755 ILCS 5/24-2 (West 2000)), because William did not object, the "account as approved is binding" on William.

William does not address this argument in his brief.

The record shows the trial court found no waiver because, it concluded, the act of transferring property from the estate to Lea did not violate the terms of the joint and mutual will. We agree. The act of transferring the property into Lea's name did not violate the agreement to dispose of property as stated in the joint and mutual will. Lea violated this agreement when she tried to change the dispositional scheme shortly before her death in direct contravention of what she agreed to do.

### III. CONCLUSION

We affirm the trial court's judgment.

Affirmed.

TURNER, P.J., and STEIGMANN, J., concur.