Filed 8/10/10                 NO. 4-09-0663

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| DEBORAH D. ERNEST and JOHN P. SONNEBORN, | ) | Appeal from |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | Morgan County |
| DOROTHY L. CHUMLEY, f/k/a DOROTHY L. SONNEBORN, | ) | No. 04CH52 |
| | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Tim P. Olson, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiffs, Deborah D. Ernest and John P. Sonneborn,
appeal from the trial court's August 2009 order denying, in part,
their complaint to construe a will.  Deborah and John argue that
the court erred by finding that the mutual will executed by
defendant, Dorothy L. Chumley, f/k/a Dorothy L. Sonneborn, and
their since-deceased father, Robert A. Sonneborn, was not en-
forceable during Dorothy's lifetime.  We affirm and remand with
directions.

I. BACKGROUND

A. The Undisputed Facts

In October 1989, Robert and Dorothy married, each
having had two children from a previous marriage.  (Dorothy did

not give birth to any children during her marriage to Robert.)

In August 2000, Robert and Dorothy each executed mutual wills that, with the exception of references to name and gender, contained identical reciprocal clauses.  In particular, Dorothy's mutual will stated, in pertinent part, the following:

"ARTICLE II

In the event my husband, ROBERT A. SONNEBORN, shall survive me for a period of at least [30] days, I give him the rest, residue[,] and remainder of my estate, of whatever nature and wheresoever located. Should my said husband so survive me, I expressly make no provision for any of my children.

* * *

ARTICLE IV

Since my husband and I each have children from a prior marriage, it is our intent that upon the death of the survivor of us, that my estate or his estate, as the case

may be, be divided one-half to my children and one-half to his children designated as beneficiaries in Article III. Accordingly, it is further our intent that upon the death of the first of us, the terms of the will of the surviving spouse shall become irrevocable."

In April 2003, Robert died, owning assets in joint tenancy with Dorothy valued at approximately $200,244, which included their home and several bank accounts. Two months after Robert's death, Dorothy executed a new will that bequeathed her entire estate to her biological children.

In December 2004, Dorothy married Thomas Chumley. The following month, Dorothy executed another will, in which she bequeathed her entire estate to (1) Thomas and, should he predecease her, then to (2) her biological children and Thomas's two children in equal shares. In February 2006, Dorothy sold the home she had shared with Robert, depositing the net proceeds of approximately $103,901 into a revocable trust account that she had held in joint tenancy with Robert but now held solely in her name. (Before Dorothy deposited the aforementioned proceeds, her trust account balance was $980.) One week later, Dorothy

withdrew $96,951 from her trust account and deposited various sums totaling the withdrawal amount into three separate certificates of deposit that she held in joint tenancy with Thomas.

B. Procedural History

In October 2004--two months before Dorothy married Thomas--Deborah and John filed a complaint to construe the will, requesting that the trial court (1) find Dorothy's August 2000 mutual will irrevocable, (2) order Dorothy to itemize the assets she owned with Robert immediately before his death, and (3) impose a constructive trust, prohibiting (a) Dorothy from making gratuitous transfers of those assets and (b) Thomas's or Dorothy's future spouses from making any statutory claims on the itemized assets.

At a December 2008 bench trial, Dorothy testified that her understanding of her August 2000 mutual will was that (1) upon Robert's death, she could use the remaining estate for her comfort, support, maintenance, and welfare during her lifetime; (2) upon her death, her estate, if any, would be divided equally among their four children; and (3) if Robert had survived her, her children would not have been entitled to control Robert's estate. Dorothy acknowledged that her June 2003 will, which left

her entire estate to her biological children, was contrary to her intent as stated in her August 2000 mutual will.

Following the presentation of evidence and argument, the trial court permitted the parties to file additional briefs in support of their respective positions.  In August 2009, the court entered the following ruling:

> "As agreed by the parties, the facts are basically not in dispute.  The issues revolve around the intent of the parties and whether [Dorothy's] will *** became irrevocable upon [Robert's] death ***.
>
> Based on the wills themselves and [Dorothy's] trial testimony ***, the [c]ourt finds her will *** became irrevocable on [Robert's] death.
>
> Moreover, the [c]ourt finds all the property of the survivor at the time of his or her death was subject to the testamentary scheme regardless of how obtained.
>
> ***
>
> The wills appear to give the survivor the unfettered right to use the property as

each saw fit.  There is absolutely no restriction in the wills on the use by the survivor.

[Deborah and John] are asking this [c]ourt to do something not provided for in the wills.

The [c]ourt finds the contract is not enforceable against Dorothy during her lifetime as the will [is not] specific as to how [Dorothy is] to use her property during her life.

This [c]ourt declines to impose such a restriction.

The relief requested by [Deborah and John] is denied."

This appeal followed.

## II. THE APPLICABILITY OF DOROTHY'S MUTUAL WILL DURING HER LIFETIME

### A. The Legal Implications of Mutual Wills

Mutual wills are the separate instruments of two or more testators that contain reciprocal terms such that each testator disposes of his or her respective property to the other.

- 6 -

In re Estate of Erickson, 363 Ill. App. 3d 279, 281-82, 841 N.E.2d 1104, 1106 (2006). In contrast, a joint will is a single instrument that contains the wills of two or more persons, and may be considered mutual if it contains reciprocal provisions. Erickson, 363 Ill. App. 3d at 281-82, 841 N.E.2d at 1106. In the case of mutual and reciprocal wills, "'a judicial presumption arises in favor of the existence of the contract from the existence of the mutual wills themselves.'" In re Estate of Aimone, 226 Ill. App. 3d 1057, 1063, 590 N.E.2d 94, 98 (1992), quoting In re Estate of Kritsch, 65 Ill. App. 3d 404, 408, 382 N.E.2d 50, 53 (1978). A contract embodied in a mutual will becomes irrevocable as to the survivor upon the death of the first testator. Freese v. Freese, 49 Ill. App. 3d 1041, 1044, 364 N.E.2d 983, 985 (1977).

### B. Deborah and John's Claim That Dorothy's Mutual Will Implicitly Restricted Her Use of Certain Assets During Her Lifetime

We first note that Deborah and John do not contest the trial court's findings that (1) in April 2003, Dorothy's mutual will became irrevocable because of Robert's death; (2) the expressed terms of Robert's and Dorothy's mutual wills (a) did not restrict Dorothy's use of the assets during her lifetime and (b) show that Robert and Dorothy entered into a contractual

- 7 -

agreement; and (3) regardless of how Dorothy obtained the assets at issue, they were subject to the testamentary scheme of their respective mutual wills.

Instead, Deborah and John argue only that the trial court erred by denying, in part, their complaint to construe the will because they are entitled to (1) an accounting and (2) the imposition of a constructive trust upon the assets owned by Robert at his death. Specifically, Deborah and John contend that although the contract embodied by Robert's and Dorothy's mutual wills did not explicitly restrict Dorothy's use of the assets at issue during her lifetime, it implicitly restricted Dorothy from (1) executing new wills, (2) selling the home she shared with Robert, and (3) transferring money into a joint account with Thomas. Thus, the narrow question before this court is whether Robert's and Dorothy's mutual wills implied restrictions upon Dorothy's <u>use</u> of the aforementioned assets during her lifetime. With one exception, we conclude that they did not. That exception is that we conclude that Dorothy's transfer of funds from the sale of her home into three certificates of deposit that she held in joint tenancy with Thomas violated the terms of the irrevocable contract created by the execution of her joint and mutual will.

### 1. The Standard of Review

"In construing a will, the court's primary [purpose] is to ascertain the testator's intent and, provided that the intention is not against public policy, to give it effect." Chicago Title & Trust Co. v. Steinitz, 288 Ill. App. 3d 926, 931, 681 N.E.2d 669, 672 (1997). A testator's intent is most clearly evidenced by considering the plain, ordinary meaning of the words used within the four corners of the entire instrument itself. Steinitz, 288 Ill. App. 3d at 931, 681 N.E.2d at 672. "Interpretation of a will is a question of law that an appellate court reviews de novo." In re Estate of Williams, 366 Ill. App. 3d 746, 748, 853 N.E.2d 79, 82 (2006).

### 2. Deborah and John's Claim That This Court Has Previously Addressed This Issue

As already mentioned, Deborah and John contend that Robert's and Dorothy's mutual wills implied restrictions upon Dorothy's use of the aforementioned assets during her lifetime. In support of their contention, Deborah and John claim that the appellate court has previously addressed this issue in Moline National Bank v. Flemming, 91 Ill. App. 3d 398, 414 N.E.2d 936 (1980). However, because Flemming concluded that the surviving spouse's conduct was improper after his death, as opposed to

during his lifetime, based on the plain language of his will, instead of inferences gleaned from it, their reliance is misplaced.

In Flemming, 91 Ill. App. 3d at 400, 414 N.E.2d at 937-38, Eva and her husband, Albert, executed an irrevocable joint and mutual will (1) giving the surviving spouse possession of the entirety of the other spouse's property in fee simple upon either spouse's death and (2) bequeathing the remaining estate to Eva's biological son and his heirs upon the surviving spouse's death. In March 1973, Eva died. Flemming, 91 Ill. App. 3d at 401, 414 N.E.2d at 938. After Eva's death, Albert created several trusts and joint accounts for an individual other than Eva's son. Flemming, 91 Ill. App. 3d at 401-02, 414 N.E.2d at 938-39. In January 1979, Albert died, and the executor sued to recover all accounts not benefitting Eva's son as estate assets. Flemming, 91 Ill. App. 3d at 402, 414 N.E.2d at 939.

In concluding that Albert acted beyond his authority when he placed assets in jointly held accounts and trust accounts for an individual other than Eva's son, the appellate court stated the following:

"The power of the surviving spouse[,] Albert[,] over the property he obtained upon

[Eva's] death *** is described in 97 C.J.S.
Wills §1367(2), at 307-309 (1957), which
states:

> 'Where an agreement as to
> mutual wills does not define the
> survivor's power over the property,
> but merely provides as to the
> disposition of the property at his
> death, the survivor may use not
> only the income but reasonable
> portions of the principal, for his
> support and for ordinary
> expenditures, and he may change the
> form of the property by
> reinvestment and the like ***.'"
> Flemming, 91 Ill. App. 3d at 405,
> 414 N.E.2d at 941.

We note that the other cases cited by Deborah and John in support of their contention also involve a surviving spouse's attempt to evade the will's disposition of assets after that surviving spouse's death.  See Helms v. Darmstatter, 34 Ill. 2d 295, 296-302, 215 N.E.2d 245, 246-49 (1966) (surviving spouse's

- 11 -

attempted testamentary transfers made three years after her husband's death held invalid after her death years later because such transfers violated the expressed terms of their joint will); Bonczkowski v. Kucharski, 13 Ill. 2d 443, 447-56, 150 N.E.2d 144, 147-52 (1958) (following the surviving spouse's death four months after her husband, the supreme court invalidated the parties' joint will but concluded that a contract existed between them that prevented the testamentary transfer of real estate to the surviving spouse's daughter); Erickson, 363 Ill. App. 3d at 281-85, 841 N.E.2d at 1106-09 (sale of real estate by the surviving spouse five days before her death held invalid because it was contrary to the parties' joint and mutual will); Freese, 49 Ill. App. 3d at 1042-45, 364 N.E.2d at 984-86 (testamentary transfers of surviving spouse made six years after his wife's death held invalid after his death two years later because transfers violated expressed terms of mutual will). Thus, as in Flemming, the aforementioned cases do not offer Deborah and John any support.

### 3. Restrictions Placed on a Surviving Spouse's Use of Bequeathed Assets During Her Lifetime

Over three decades ago in First United Presbyterian Church v. Christenson, 64 Ill. 2d 491, 356 N.E.2d 532 (1976), the

supreme court considered the effect of explicit restrictions on the use of bequeathed assets during a surviving spouse's lifetime.  In Christenson, 64 Ill. 2d at 494-95, 356 N.E.2d at 534, Margaret and her then-husband, Lewis, executed a joint and mutual will that (1) gave the surviving spouse possession of the entirety of the other spouse's estate upon either spouse's death; (2) explicitly prohibited Margaret, as the surviving spouse, from selling two parcels of land devised to the First United Presbyterian Church; and (3) upon the surviving spouse's death, bequeathed the remaining estate to their nieces and nephews to "share and share alike."

Approximately three years after Lewis's death, Margaret executed two warranty deeds conveying the two parcels of land devised to the church to her nieces and nephews. Christenson, 64 Ill. 2d at 495, 356 N.E.2d at 534.  The church brought suit, requesting, in part, that the trial court set aside the warranty deed.  Christenson, 64 Ill. 2d at 495, 356 N.E.2d at 534.  The court found that because the will expressly limited Margaret from selling the parcels, the warranty deeds were null and void. Christenson, 64 Ill. 2d at 495-96, 356 N.E.2d at 534-35.

The appellate court reversed, concluding, in pertinent part, that because Margaret and Lewis held the parcels as joint

- 13 -

tenants, the church did not acquire a property interest under the will but, instead, was a third-party beneficiary under the contract embodied in the will.  Christenson, 64 Ill. 2d at 496, 356 N.E.2d at 535.

In reversing the appellate court, the supreme court held that the plain language of Margaret's and Lewis's will did not prohibit Margaret from conveying the parcels to her nieces and nephews during Margaret's lifetime.  Christenson, 64 Ill. 2d at 499, 356 N.E.2d at 536.  In so holding, the supreme court directed the trial court to enter an order (1) finding Margaret's nieces and nephews owners of the parcels until Margaret's death and (2) enjoining them from executing any instrument that would convey the parcels in a manner inconsistent with the church's ownership interest after Margaret's death.  Christenson, 64 Ill. 2d at 499-500, 356 N.E.2d at 537.

### 4. The Plain Language of Robert's and Dorothy's Respective Mutual Wills

Deborah and John premise their argument that Robert's and Dorothy's respective mutual wills implicitly restricted Dorothy's use of the bequeathed assets during her lifetime on (1) Dorothy's attempts to make a purported testamentary transfer that was contrary to her irrevocable August 2000 mutual will and (2)

- 14 -

the clause bequeathing them each a one-quarter interest in Dorothy's estate upon Dorothy's death. However, Deborah and John's contentions ignore that (1) "[a] clause in a will purporting to bequeath property to someone is testamentary and has no effect until the death of the testator" (In re Estate of Lowry, 93 Ill. App. 3d 1077, 1082, 418 N.E.2d 10, 14 (1981)) and (2) we construe the plain language of the will--that is, we do not infer provisions the testator might have made had he or she thought of a particular contingency. Larison v. Record, 117 Ill. 2d 444, 448-49, 512 N.E.2d 1251, 1253 (1987).

In this case, the plain, unambiguous language of Robert's and Dorothy's respective August 2000 mutual wills shows, in pertinent part, that (1) upon Robert's April 2003 death, (a) Dorothy was immediately entitled to the entirety of Robert's assets without restriction, (b) Deborah and John were not entitled to any of Robert's assets, and (c) Dorothy's mutual will became irrevocable, and (2) upon Dorothy's death, Deborah and John would each be entitled to a one-quarter interest in Dorothy's estate. If Robert and Dorothy intended to place restrictions on Dorothy's use of the bequeathed assets during her lifetime, they could have easily expressed their intent to do so in their mutual wills as the parties did in Christenson. They

- 15 -

did not, and we decline to infer otherwise. Thus, we reject Deborah and John's contention that Robert's and Dorothy's mutual wills implicitly created a life estate that restricted Dorothy's use of the assets at issue during her lifetime. However, our analysis does not end here.

5. Dorothy's Ownership of Assets in Joint Tenancy With Robert

As previously noted, Deborah and John do not contest the trial court's findings that (1) Robert and Dorothy entered into a contractual agreement when they executed their respective mutual wills, (2) Dorothy's contractual obligation based on that execution became irrevocable upon Robert's death, and (3) the expressed terms of Robert's and Dorothy's mutual wills did not impose any restrictions upon Dorothy's use of the assets in question. Despite the parties' apparent agreements with regard to those issues, and this court's previous conclusion that Robert's and Dorothy's mutual wills did not impose any implicit restrictions on Dorothy's use of the assets at issue, Dorothy was still bound by the expressed intent of the underlying irrevocable contract created by her mutual will. Specifically, that upon Dorothy's death, Deborah and John would each inherit one-quarter of her remaining estate. See Rauch v. Rauch, 112 Ill. App. 3d 198, 200, 445 N.E.2d 77, 79 (1983) ("A joint and mutual will must

- 16 -

be executed pursuant to a contract between the testators, requiring the survivor of them to dispose of the property as the will's provisions instruct").

Although assets held in joint tenancy do not pass under a joint and mutual will, they can be the subject of a contractual agreement contained within a joint and mutual will and a court, under the appropriate circumstances, can enforce the agreement by limiting the surviving spouse's disposition of property. Christenson, 64 Ill. 2d at 497, 356 N.E.2d at 535. Although not immediately entitled to possession until the death of the surviving spouse, third-party beneficiaries of a joint and mutual will are entitled to enforcement of the underlying contract. Rauch, 112 Ill. App. 3d at 200, 445 N.E.2d at 80.

In this case, the record shows that Robert and Dorothy expressly bequeathed the entirety of their respective estates to the surviving spouse--in this case Dorothy--intending to leave the residue of that estate, however much that estate might be at the time of her death, to Robert's and Dorothy's biological children in equal shares. The record also shows that after Robert's death, Dorothy deposited a substantial portion of the funds she received from the sale of the home she previously owned with Robert into three separate certificates of deposit, which

- 17 -

she held in joint tenancy with Thomas. However, in so doing, Dorothy effectively breached the expressed intent of her irrevocable contract by removing those funds from her estate by operation of law. See Bonczkowski, 13 Ill. 2d at 451, 150 N.E.2d at 149 ("An essential feature of the estate of joint tenancy is the right of survivorship, that is, the right of the last survivor to take the whole of the estate" immediately upon the death of the other joint tenant by operation of law).

Accordingly, we remand to the trial court with directions that it enter an order mandating that Dorothy (1) terminate Thomas's interest in the aforementioned certificates of deposit and (2) refrain from taking any future action that is inconsistent with Deborah and John's future interest in her estate except expenditures made for her own support.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with direction.

Affirmed; cause remanded with directions.

APPLETON and McCULLOUGH, JJ., concur.