# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *In re Estate of White*, 2020 IL App (4th) 190385

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF MAHLON O. WHITE, Deceased (Robert Hubner; St. Paul's Catholic Church, Danville, Illinois; Schlarman Academy Foundation; OSF Healthcare Foundation; and Young Men's Christian Association of Danville, Illinois, Petitioners-Appellees, v. The Illinois Great Rivers Conference of the United Methodist Church, Respondent-Appellant). |
| District & No. | Fourth District<br>No. 4-19-0385 |
| Filed | February 27, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 16-P-227; the Hon. Charles C. Hall, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | John A. Kauerauf, of Sorling Northrup, of Springfield, for appellant.<br><br>James A. Martinkus, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee Robert Hubner.<br><br>No brief filed for other appellees. |

Panel                        JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Cavanagh and Holder White concurred in the judgment and opinion.

## OPINION

¶ 1       Respondent, the Illinois Great Rivers Conference of the United Methodist Church, formerly known as the Central Conference of the United Methodist Church of Illinois, appeals from the trial court's order finding Richard S. White had granted Mahlon O. White the power to dispose of Richard's interest in certain farmland by testamentary devise. On appeal, respondent argues we should reverse the trial court's order, as the plain language of Richard's will does not demonstrate he intended to grant Mahlon a testamentary power of disposition. We agree and reverse.

¶ 2                                  I. BACKGROUND

¶ 3       Richard and Mahlon White were brothers who owned separate undivided interests as tenants in common in approximately 416 acres of farmland in Vermilion County.

¶ 4       In 1995, Richard died, leaving a will. Richard's will provided the following:

      "THIRD: I devise all of my real estate to my brother, MAHLON O. WHITE, and his wife, MARY WHITE, for their lifetime and the lifetime of the survivor; provided, however, that they shall have full right to sell or dispose of such real estate during their lifetime and to use the proceeds for whatever purpose they may desire.

      FOURTH: In the event both Mahlon O. White and Mary White shall predecease me or in the event at the time of the death of the survivor of Mahlon O. White and Mary White, my real estate has not been sold or otherwise disposed of, then all of my real estate shall be liquidated and the monies received from such liquidation, together with any monies received from the sale of personal property (if Mahlon O. White and Mary White have predeceased me) shall be distributed as follows:

      A. $10,000.00 to BOSWELL CEMETERY, Boswell, Indiana, to be used for the maintenance and upkeep of said cemetery.

      B. The balance to be paid over to the CENTRAL CONFERENCE OF THE UNITED METHODIST CHURCH of Illinois."

¶ 5       In December 2016, Mahlon died, having been predeceased by his wife, Mary White. Mahlon left a will and three codicils thereto. With respect to the approximate 416 acres of farmland in Vermilion County, Mahlon's will devised a specific portion of the farmland to Robert Hubner and then granted Hubner the right to purchase the remainder of the farmland upon certain terms and conditions. The proceeds from any purchase were to be distributed equally to St. Paul's Catholic Congregation, Schlarman High School Foundation, Provena United Samaritans Medical Center Foundation, and Danville Family YMCA. Mahlon's will was admitted to probate, and an independent executor was appointed.

¶ 6       In June 2018, the independent executor of Mahlon's estate filed a petition for instruction concerning the ownership of the approximate 416 acres of farmland in Vermilion County. The

petition alleged that, in March 2017, Hubner sought to exercise his right to purchase the farmland not specifically devised to him. Written arguments were filed by interested parties, Hubner and respondent.

¶ 7    In May 2019, the trial court entered a written order finding Mahlon had been granted under Richard's will the power to dispose of Richard's interest in the farmland by testamentary devise, which he duly exercised by drafting a will devising a specific portion of the farmland to Hubner and granting Hubner the right to purchase the remainder thereof. The court reached this finding by focusing on the language Richard used in his will that granted Mahlon the power to "dispose of" Richard's interest in the farmland and the fact Black's Law Dictionary (rev. 4th ed. 1968) defined "[d]ispose of" as to "alienate or direct the ownership of property, as disposition by will."

¶ 8    This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10   On appeal, respondent argues we should reverse the trial court's order finding Mahlon had the power to dispose of Richard's interest in the farmland by testamentary devise as the plain language of Richard's will does not demonstrate he intended to grant a testamentary power of disposition. Hubner disagrees, maintaining Richard intended to grant Mahlon a testamentary power of disposition based on his use of the language "dispose of" and its dictionary definition.

¶ 11   We review *de novo* a trial court's legal conclusions as to the construction and legal effect of a will. *Ernest v. Chumley*, 403 Ill. App. 3d 710, 714, 936 N.E.2d 602, 606 (2010). When construing a will, a court's primary objective is to ascertain and give effect to the intent of the testator. *Harris Trust & Savings Bank v. Beach*, 118 Ill. 2d 1, 3, 513 N.E.2d 833, 834 (1987). "A testator's intent is most clearly evidenced by considering the plain, ordinary meaning of the words used within the four corners of the entire instrument itself." *Ernest*, 403 Ill. App. 3d at 714.

¶ 12   It is undisputed Richard devised his interest in the farmland to Mahlon as a life estate with a power of disposition.

> "[A]s a general rule, where a power of disposal accompanies a devise of a life estate, the power of disposal is only co-extensive with the estate which the devisee takes under the will, and means such disposal as a tenant for life could make, unless the will contains words indicating that a larger power was intended." *In re Estate of Cashman*, 134 Ill. 88, 92, 24 N.E. 963, 963 (1890).

A tenant for life can ordinarily only make *inter vivos* dispositions. Accordingly, we must look to the language of Richard's will to determine whether Richard intended to grant a larger power of disposition—a testamentary power of disposition.

¶ 13   Richard's will does not explicitly grant Mahlon the right to dispose of Richard's interest in the farmland by will. To find that Richard intended to grant a testamentary power of disposition, the trial court relied upon the language in Richard's will granting Mahlon the right to "dispose of" Richard's interest in the farmland and the dictionary definition of that language. The court failed, however, to consider the language in Richard's will qualifying the right to dispose of the farmland. Richard granted Mahlon and Mary the right to "dispose of [his interest in the farmland] *during their lifetime*." (Emphasis added.) The qualifying language indicates Richard contemplated any disposition to occur while Mahlon or Mary were alive.

- 3 -

While wills are drafted during one's lifetime, any disposition under a will occurs only after the testator dies. *Thompson v. J.D. Thompson Carnation Co.*, 279 Ill. 54, 61, 116 N.E. 648, 650 (1917) ("[T]he binding force of a will comes from the fact that it is the last expressed purpose of the testator in regard to the disposition of his property after his own death. While he lives it is without force or value, but it begins to speak when he ceases to do so and is thereafter heard in his stead." (Internal quotation marks omitted.)). Given the qualifying language, we cannot conclude that the language granting Mahlon the right to "dispose of" Richard's interest in the farmland evinces an intent to grant a testamentary power of disposition. See *Burkholder v. Burkholder*, 412 Ill. 535, 539, 107 N.E.2d 729, 731 (1952) ("The testator here delineated the devise to his wife with the phrase, 'to be by her used and disposed of during her natural life,' thus limiting the power of disposition to her lifetime, and precluding a disposition by will." (Emphasis omitted.)).

¶ 14 In fact, we are convinced from our review of Richard's will that Richard intended his interest in the farmland to be used solely for Mahlon's and Mary's benefit while they were alive. The language used in the will indicates Richard contemplated Mahon and Mary benefiting from the use of the farmland during "their lifetime," which included the possibility of Mahlon or Mary having to dispose of the property and "to use the proceeds for whatever purpose they may desire." Richard further provided for the event in which Mahlon and Mary had not sold or otherwise disposed of his interest in the farmland and named the entities the farmland should thereafter benefit. We find nothing in Richard's will to conclude that Richard intended to grant Mahlon a testamentary power of disposition that would allow third parties named by Mahlon to benefit from Richard's interest in the farmland after Mahlon's death and cut out the remainderman named by Richard.

¶ 15 We find Richard devised his interest in the farmland to Mahlon and Mary as a life estate with a *lifetime* power of disposition. Because neither Mahlon nor Mary exercised that power of disposition, Richard's interest in the farmland should pass in accordance with the terms of Richard's will.

¶ 16                                                    III. CONCLUSION

¶ 17 We reverse the trial court's order.

¶ 18 Reversed.